HON. HOYT H. WHEELER,
HON. TIMOTHY P. REDFIELD, } ASSISTANT JUDGES.
HON. JONATHAN ROSS,

---

DANA R. BAILEY, JACOB ESTEY, JOHN M. BARTLETT, LOVELAND MUNSON, PERLEY P. PITKIN, AND JOSIAH GROUT, JR., *v.* HENRY OVIATT.

*Mandamus.*

The writ of *mandamus* will not be issued to compel the performance of a *mere service.* Thus, where a legislative committee appointed under a joint resolution to inquire, among other things, whether money had at any time been paid by certain parties to any member of the legislature for the purpose of influencing legislation, with power to send for persons and papers, but without authority conferred by the resolution to employ a clerk,—employed a stenographer to take down the testimony given before the committee, the court refused to issue a writ of *mandamus* to compel the stenographer to furnish the committee a transcript of his minutes, that it might be made a part of their report.

PETITION for *mandamus.* The case is fully stated in the opinion.

*C. N. Davenport*, for the relators.

The joint resolution authorizes by necessary implication, the committee to employ a clerk and stenographer. The direction to " investigate fully all and singular the matters above referred to," the power " to send for persons and papers and to employ counsel to prosecute the investigation to its fullest extent," necessarily confers the power to make use of the usual means and methods to carry out the purpose of their appointment. I do not deem the question at all important, whether the committee had power to employ the defendant at the expense of the state. It is none of his business, and it does not lie in his mouth to make the objection. The committee did employ him, he accepted the employment, and agreed to discharge its duties, and entered upon the work. Without que~tion or objection, he took all the testimony as their clerk, their servant, their stenographer. This testimony when taken belonged to the committee. It was a part of their work as public servants. This court has power to compel the committee to discharge their duty, and it has a like power over the defendant.

The writ of *mandamus* is a high prerogative writ of a most extensively remedial nature, and " issues in all cases where the party hath a right to have anything done, and hath no other specific means of compelling its performance." Though often addressed to inferior courts, it is by no means confined to judicial matters. Any person, corporation, or court which neglects any legal duty, may by this writ, be compelled to do it. 3 Bl. Com. 110 ; 1 Chit. Pr. 789–804 ; *Kendall* v. *United States*, 12 Pet. 524, 613 ; *Richards et al.* v. *Wheeler*, 2 Aik. 369 ; *In re White River Bank*, 23 Vt. 478 ; *Walter* v. *Belding et al.* 24 Vt. 658 ; *Kidder* v. *Morse*, 26 Vt. 74 ; *Woodstock* v *Gallup*, 28 Vt. 587 ; *Orange* v. *Bill et al.* 29 Vt. 442 ; *Hall* v. *Selectmen*, 39 N. H. 517 ; *People* v. *Brooklyn*, 1 Wend. 318 ; *Marbury* v. *Madison*, 1 Pet. Cond. 278. This court has all the power of the court of King's Bench of England, and may issue this writ whenever it appears to be necessary " to the furtherance of justice and the regular execution of the laws." Gen. Sts. ch. 30, § 11.

The duties devolving upon the relators as a committee acting

under the authority of the general assembly, are of a public character, and in the faithful discharge of those duties, the public have an interest. The subject-matter of that investigation concerns the highest interests of every citizen. *People* v. *Throop*, 12 Wend. 183 ; 12 Pet. 542 ; *Marbury* v. *Madison, supra ; Taylor* v. *Henry*, 2 Pick. 397.

The opinion of the court was delivered by

Ross, J. This is a petition for a writ of *mandamus*. The relators are a committee from the senate and house of representatives of 1872, appointed under, and deriving their authority from, the following joint resolution : " *Resolved*, That a committee of three senators and three members of the house be appointed respectively by the president of the senate and by the speaker of the house, to inquire whether or not it is true that in A. D. 1869, or at any time before or since that time, money was paid directly or indirectly by any trustee, manager, receiver, officer, or agent of any railroad or railroad company in this state, to any member of either house of the legislature for the purpose of influencing legislation ; whether or not it is true, that under any power derived from either branch of the government of this state, any person connected with the aforesaid railroads or companies, has practiced frauds or peculations ; and finally, to investigate fully, all and singular the matters above referred to ; and said committee to have power to send for persons and papers and to employ counsel to prosecute the investigation to its fullest extent, and to make report to the present session of the legislature ; also to inquire whether any member or officer of either house of this general assembly has written, or aided in procuring to be published, the articles in the Boston Traveller, touching any measures now pending before the legislature ; also, whether any member or officer of either house of the general assembly are in the pay and employment of any individuals opposed to the passage of any such pending measures." By a subsequent resolution, the committee were authorized to pursue their investigations after the adjournment of the general assembly, and make report to the governor on or before July 1, 1873,

In pursuing their investigations, the committee employed the defendant to take and report the testimony that should be produced before them. The defendant entered upon the employment, took the testimony, has transcribed some of it, and has failed to transcribe the residue. It is unnecessary to inquire whether the resolution conferred upon the committee the power to employ the defendant in that capacity. It is sufficient that it did not create the office of reporter for the committee, and appoint, or empower the committee to appoint, the defendant or any other person to that office. In taking and reporting the testimony, the defendant was not discharging the duties of any public office. He was acting as the mere servant of the committee, as it were, their hands to take down the words as they fell from the lips of the witnesses, in short hand, and afterward to transcribe his characters into written language. In the petition, the relators say, " They employed, by their chairman, Henry Oviatt, of Montpelier, in the county of Washington, to act as clerk and stenographer, and as such, to take full and accurate notes of the testimony introduced and given before them, and said Henry Oviatt accepted the office, duty, and trust of clerk and stenographer for said committee." The committee could have discharged the defendant from their employment at any time, and he could have withdrawn from such employment at any time. He held no office, the duties of which he could compel the committee to allow him to discharge ; nor could he be compelled, longer than he chose, to discharge such duties. While acting as clerk and stenographer for the committee, he was performing a service, discharging the duties of an employment, duties imposed by contract, and nothing more. From the affidavits read on the hearing, which are to be taken as true, inasmuch as the defendant allowed the petition to be defaulted, it appears that the defendant discharged the duties of his employment to the acceptance of the committee, so far as to take in full, stenographically, all the testimony introduced, and to transcribe a considerable portion of it. He has not absolutely refused to make a transcript of the residue of the testimony and deliver it to the committee. By what appear to be false promises, evasions, groundless excuses, if not wilful falsehoods, he seems to have done worse than to absolutely refuse.

No court would hesitate to command him to discharge his duty, and redeem, at least, one of his many promises, if he stood in a position which gave to the court the legal power to command and to enforce its commands. The relators ask this court to command him to transcribe and deliver to them the balance of the testimony taken. Can this court legally issue such command? By Gen. Sts., ch. 30; §11, this court is clothed with the power to issue a writ of mandamus " to the furtherance of justice and the regular execution of the laws." This confers upon this court all the power to issue such a writ that was exercised by the court of King's Bench. "A mandamus is a writ commanding the execution of an act where otherwise justice would be obstructed, or the kings charter neglected, issuing regularly only in cases relating to the public and the government, and is therefore termed a prerogative writ, being grantable only where the public justice of the nation is concerned." Bac. Ab. *Mandamus*. The same author cites a number of cases in which the court of King's Bench refused to issue the writ to compel the performance of a *service*. From a careful investigation of all the cases to which I have had access, I have not been able to find one in which the writ has been issued to compel the performance of a mere service. While it is of a highly remedial nature, "to the furtherance of justice and the regular execution of the laws," courts having jurisdiction of the writ, can use it only to compel the discharge of duties imposed by *law*, as distinguished from duties imposed by *contract* merely. The duty of the defendant was created by his contract with the committee. It is a duty he owes to the committee as their servant, and not one he owes to them by reason of any office which he holds, or from having it imposed upon him by law. He is under no obligation to discharge the duty because he owes it to the public, and the committee have the right to have the duty discharged, because they have a special interest in its discharge as a public duty. It is true that his failure to discharge his contract duty to them, hinders them in the discharge of their public duty as a committee of investigation, but that does not render his any more a public duty. It simply shows that the committee were very unfortunate in the choice of a servant. Suppose that the defendant, after

having contracted to act as clerk and stenographer for the committee, but before entering upon the work, had refused to act in that capacity, would any one claim that this court could compel him to perform those services by the writ of *mandamus?* We think not. No more can it legally issue the writ to compel him to perform what remains unperformed of those services. "A *mandamus* lies to deliver up the ensigns of an office, or the papers or records of a public nature to a successor; as a *mandamus* to deliver the mace and other ensigns of mayoralty to the succeeding mayor, or to an ex-town clerk to deliver to his successor the several books which belong to the office." Bac. Ab. *Mandamus; Walter* v. *Belden,* 24 Vt. 658. The committee have attempted to make the testimony a part of their report. It is somewhat difficult to comprehend how that can be a part of their report which they never have had in their possession to deliver to the governor. Their report, when made, will be of a public nature, and treat of matters which pertain to the public welfare. If the report had been completed, and he was detaining it from them, authorities are not wanting to show that he could be compelled by *mandamus* to deliver it to the relators. If the respondent had taken the testimony in the discharge of a public duty, doubtless the court could compel him to transcribe his stenographic characters into written language, and to deliver the transcript to the committee. His stenographic report of the testimony is his own private property, and though taken to be transcribed for the committee, is not claimed to belong to the committee. He does what is tantamount to a refusal to transcribe his stenographic notes, and to deliver the transcript to the committee. This is only the refusal to discharge the duty which he agreed to perform by his contract with the committee. He has no part of their report in his possession. They ask to have him compelled to transcribe his minutes and deliver them the transcript, that they may make the transcript a part of their report. It is not the delivery of a part of their report, but the performance of his contract duty, which they ask this court to compel. We have not been able to find any adjudged case, or principle of law, which will authorize the issuing of the writ. Its issue in effect would be a compelling

of the specific performance of a personal contract for service, for which we do not know of any authority in law. Compensation in the nature of damages, has always been held to be the appropriate and an adequate remedy for the breach of a contract for the performance of a simple service. Where a party has an adequate remedy, or a remedy which the law deems adequate, courts will not, ordinarily, issue the writ of mandamus.

The petition of the relators is dismissed.