JOHN BRADBURY

v.

MUTUAL RESERVE FUND LIFE ASSOCIATION.

Where a policy in a mutual life insurance company has been forfeited by failure to pay the premiums upon the day fixed and the holder has the right upon certain terms, which he is able and willing to fulfill, to be relieved from his default, his remedy against the company is not by *mandamus*, but in a court of equity, for relief in the nature of specific performance.

On demurrer to bill.

*Mr. J. Frank Fort*, for the demurrant.

*Mr. John Griffin*, contra.

PITNEY, V. C.

The object of the bill is to restore complainant to his standing and pecuniary rights in the defendant association, which he says he has temporarily lost by failing to pay his bi-monthly dues on the precise day upon which they came due.

Two points are made against the bill:

*First.* That it fails to show facts entitling complainant to relief.

*Second.* That complainant's remedy is by *mandamus.*

The bill is somewhat meagre in its statements, so much so that complainant's counsel suggested an amendment. Without determining whether it is sufficient in its present shape, I will consider it as if amended as suggested.

Read in that way it sets out that defendant is a mutual assessment life association, duly incorporated under the laws of New York, in which certificates of membership are given in particular sums which entitle the holder or his personal representatives to the payment of that sum upon his death. The statement, in effect, is that the certificate does not—like an ordinary life insurance policy—contain the terms of the contract between the association and the complainant, but is a mere certificate of his membership, including the extent of his interest, resembling, in that respect, a certificate of stock in an ordinary corporation. The contract proper is found in the constitution and rules of the association, which require the member to make certain annual payments for the purpose of meeting the expense of operation, and, in addition, certain bi-monthly payments or assessments called mortuary calls, which last constitute the fund proper from which death payments are made.

The bill states that, as an inducement to complainant to become a member, it was represented to him by the officers of the association, in such a manner as to become a part of the terms of the contract of membership:

"A member who lapses his certificate may reinstate the same at any time within one year for good cause shown and upon satisfactory evidence of good health, and upon payment of all delinquent dues and assessments;"

Bradbury *v.* Mutual Reserve Fund Life Association.

and that

"the mortuary premiums, unless paid half-yearly or yearly, in advance, are due and payable every two months, viz., February, April, June, August, October and December, and if not paid within thirty days from the first week-days of said months, the policy will lapse, but may be revived at any time within twelve months from date of lapse, on presentation of a health certificate satisfactory to the association and payment of all arrears of premium;"

and the constitution provides that

"the executive committee shall have power to reinstate a delinquent member, at any time, within a year, for good cause shown, and upon satisfactory evidence of good health, and upon payment of all delinquent dues and assessments."

Complainant purchased a certificate of membership in 1883 to the extent of $1,000, and paid all his dues thereon up to and including August, 1893. On October 1st, 1893, a mortuary call of $2.57 was made by the association upon him, payable November 1st, 1893, which he was unable to pay for a cause which is not set out with particularity, but which I shall assume will, upon actual amendment, appear to be a good cause, and that he made default, but that three days afterwards he procured the necessary sum, and on November 4th, 1893, duly called at the office of the association and applied for reinstatement and offered to pay the August dues, and that he subjected himself to examination as to the state of his health, and was examined by a medical examiner of the association, and that the defendant declined to reinstate him on the ground, as I infer (though it is not so stated), that he was not in a proper state of health. Then follows this statement:

"And your orator further shows unto your honor, that he is in good health and has been examined by prominent physicians in the city of Jersey City, who have made a thorough examination of him and pronounce him in good health and a first-class insurable risk, and he has tendered himself ready and willing to submit to a medical examination of competent physicians as to whether or not he is in good health and forms a good insurable risk, and the said defendants have refused to comply with such reasonable request, and decline to take as satisfactory evidence of good health the certificate of any physician, excepting such as are employed by them, and fraudulently refuse to reinstate your orator, well knowing that your orator is in good health and forms a proper subject of insurance according to their rules and regulations."

And then this allegation :

"And your orator tenders himself ready and willing to pay the dues and :assessments accrued, and to submit to the examination of physicians, to give satisfactory evidence to said association that he is in good health and forms a ;proper insurable risk according to their rules and regulations, under the direc- .tion of this honorable court."

The prayer is that defendant may be decreed to reinstate complainant to membership.

Upon this allegation I must assume that complainant at the date of his failure, November 1st, 1893, and subsequent tender, November 4th, 1893, was, in fact, in good health and a fit person to be insured, and that he fully met the requisitions of the contract above set out. If so, I can see no ground for the refusal to restore him. It is well settled, as I suppose, that no person has a right to refuse, arbitrarily, to be satisfied with that which, in justice, he ought to be satisfied with because it is intrinsically satisfactory. If A contract to construct for B a carriage of a particular quality and description to the satisfaction of B, and does, in point of fact, construct such a carriage of the particular quality and description provided for in the contract, B cannot escape payment by simply declaring that he is not satisfied with it. He is bound to be satisfied with it.

I think, therefore, the complainant has shown a right to be reinstated, upon terms, of course, of proving that he was in such state of health, and of paying the arrears of dues.

Next as to his remedy by *mandamus.*

It is well settled that *mandamus* is an extraordinary writ and does not lie where there is another legal remedy. Mr. High properly defines it as a command directed to some corporation, officer or inferior court, requiring the performance of a particular duty which results from the official station of the party to whom the writ is directed, or from operation of law. And see *Bacon's Abridgment, tit. " Mandamus;" Bailey v. Oviatt, 46 Vt. 627.* Originally it was resorted to for the purpose of reinstatement of membership only in public or municipal corporations, but has of late been extended to membership in certain classes of private

corporations. *High Extr. Rem.* § *294; Sibley* v. *Carteret Club,. 11 Vr. 295.* That was a case where the prosecutor had been unlawfully removed from membership in an ordinary social club,. of which the membership, like that in an ordinary medical society, or a chamber of commerce, or a religious corporation,. has no intrinsic money value, but its value depends upon the personal use of the privileges of membership.

No case was cited to me, nor have I found any, where it was ever resorted to for the purpose of restoring a party to member-- ship in an incorporated association like that here in question (which, as I view it, does not differ materially from an ordinary mutual life insurance company), nor where the prosecutor had not been removed, but had lost his right by a simple failure to- perform something on his part, and where something was to be- done as a condition precedent to his restoration.

The real question is as to the intrinsic character of the right which has here been infringed. Is it one resting in private con- tract, for whose breach the party has his remedy either by action at law for damages, or in equity for specific performance? If such be its character, and the matter ultimately involved is money- merely, then the party has no standing to ask for the prerogative- writ of *mandamus.*

This seems to be the acknowledged rule.

The Common Law Procedure act of 1854, section 68, enlarged' the use of the writ of *mandamus* in England by declaring that the plaintiff should be entitled to that writ "commanding the- defendant to fulfill any duty in the fulfillment of which the- plaintiff is personally interested." Under that act distinguished counsel applied to the court of queen's bench for a writ to be directed to a landlord commanding him to execute a lease of lands pursuant to a written contract. *Benson* v. *Paull, 6 El. & B. 273.* Lord Campbell in denying the writ said that the statute- did not extend to the fulfillment of duties arising merely from personal contract. To the same effect were the judgments. of the other judges who sat with him.

The authorities in this country are to the same effect. In *Parrott* v. *Bridgeport, 44 Conn. 180,* the application was for a

*mandamus* to compel the city to construct part of a certain street in a particular and special manner for the especial benefit of the applicant, whose right to have it so constructed depended upon a special contract entered into by the city with the applicant. The court says (at *p. 182*): "The duty, therefore, if any, which rests upon the city in this regard, is one which it owes to the petitioner as an individual, not to the public, *and the special contract is the foundation upon which it rests.* But the writ of *mandamus* has never been considered as an appropriate remedy for the enforcement of contract rights of a private and personal nature, and obligations which rest *wholly upon contract*, and which involve no questions of public trust or official duty. Indeed, strictly speaking, it never lies where the party aggrieved has adequate remedy at law, and its aid is only to be invoked to prevent an absolute failure of justice in cases where ordinary legal processes furnish no relief." The learned judge cites *Commissioners* v. *Zanesville Turnpike Co., 16 Ohio St. 308*, and *Bohannon* v. *Howard Co., 39 Mo. 375*. In the latter case, the supreme court of Missouri refused a *mandamus* asked for by a military recruit, who was entitled to a bounty offered by the county for volunteers, on the ground that his right rested entirely in contract.

In *Baily* v. *Oviatt, supra,* a writ of *mandamus* was refused, which was asked for by a legislative investigating committee, to be directed to the stenographer employed by the committee commanding him to write up his notes of the evidence given to the committee in the course of its duties. In the course of its opinion the court says: "The writ can be used only to compel the discharge of duties imposed by law as distinguished from duties imposed by contract merely." And see *High Extr. Rem.* §§ *25, 28; 2 Spell. Extr. Rel. § 1379. Apgar* v. *Trustees, 5 Vr. 308*, is not discordant with this rule. There the *mandamus* was directed to the trustees of a school district, commanding them to perform an official and ministerial duty imposed upon them by statute, viz., to give the applicant an order on the township collector for the amount of her salary duly earned as a teacher in the public school, the order to be paid out of public moneys in

the collector's hands devoted to that particular purpose. In the course of his opinion the learned judge says: "The true test by which to determine the right of a party suing for a *mandamus* is —*first*, whether he has a clear legal right; and *secondly*, whether there is any other appropriate specific remedy to enforce that right. This writ can be invoked only where no other adequate remedy exists, to prevent the failure of justice. It cannot be appealed to where the end sought to be attained can be otherwise accomplished, *and was never designed to be applied to the mere collection of debts.*"

Turning now to the case in hand, I find nothing in it other than the contractual relations between an ordinary mutual life insurance company and the special individual members of which it is composed. The incorporated association agrees in consideration of certain periodical payments to pay the personal representative or nominee of the member a certain sum of money at his death. There is here no present current, social or professional benefit to the member attached to his membership, nor is he subject to any continuing conditions of personal behavior, conduct or qualification, such as we find in memberships in religious, benevolent or other social organizations, or in medical or other scientific societies. The right to the prospective benefit of his membership has been lost, not by any breach of the rules of personal conduct, but by failure in a matter of contractual duty to pay money on the day fixed by the contract, and his right to be restored to his contractual rights depends upon a clause or clauses in the contract which entitle him to such restoration upon certain conditions which I have found he either performed or is ready to perform.

This view shows clearly enough that the case is not a proper one for *mandamus*, but is one for specific performance in this court.

This result is sustained by the adjudged cases.

In *Cohen* v. *New York Mutual Life Insurance Co., 50 N. Y. 610*, relief was prayed in equity and was resisted, *inter alia*, on the ground that *mandamus* was the proper remedy, but the contrary was adjudged. This ruling was followed in *Meyer* v.

*Knickerbocker Life Insurance Co., 73 N. Y. 516.* To the same effect is *Day* v. *Connecticut General Life Insurance Co., 45 Conn. 480,* and *Union &c. Insurance Co.* v. *Pottker, 33 Ohio St. 459, 464, 465.*

The demurrer should be overruled, but, as amendment was asked, without costs.