UNITED STATES ex rel. GREENBRIER COAL & COKE CO. v. NORFOLK & W. RY. CO. et al.

(Circuit Court, S. D. West Virginia. June 24, 1905.)

1. INTERSTATE COMMERCE—FEDERAL COURTS—MANDAMUS.

The only authority for the issuance of mandamus by a federal court in a suit by a shipper to prevent unlawful discrimination by an interstate railroad is conferred by Act Cong. March 2, 1889, c. 382, 25 Stat. 855 [U. S. Comp. St. 1901, p. 3157], supplementary to the interstate commerce act and its amendments, providing that the federal Circuit and District Courts shall have jurisdiction, on relation of any person, firm, or corporation, alleging violation by a common carrier of any of the provisions of the act which prevents relator from having interstate traffic moved on terms or conditions as favorable as those given by the common carrier for like traffic under similar conditions to any other shipper, to issue mandamus to prevent such discrimination, etc.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 93.]

2. SAME—CONTRACTS.

Where an interstate railroad contracted with complainant and other shippers to furnish coal and coke cars to such shippers on a basis that each shipper should receive such proportion of the total car supply as the number of his coke ovens bore to the whole number of coke ovens operated in the field, and relator admitted the validity of such contract, and that a distribution according thereto was equitable, but alleged that it was discriminated against, in that it did not receive the proportion of cars to which it was entitled according to such distribution, a mandamus proceeding to compel an equitable distribution of cars according to such proportion was in effect a proceeding to enforce private contractual obligations, and not to prevent discrimination in violation of interstate commerce act, as amended by Act Cong. March 2, 1889, c. 382, 25 Stat. 855 [U. S. Comp. St. 1901, p. 3157], and was therefore unsustainable.

Upon Motion to Quash the Alternative Writ

C. W. Dillon and Price, Smith & Spillman, for relator.

Jos. I. Doran and Holt & Duncan, for Norfolk & Western Ry. Co. Vinson & Thompson, for Empire Coal & Coke Co., Elkhorn C. & C. Co., and McDowell C. & C. Co.

Brown, Jackson & Knight and David E. Johnston, for Turkey Gap C. & C. Co.

KELLER, District Judge. The Greenbrier Coal & Coke Company, suing in the name of the United States of America, exhibited its petition against the Norfolk & Western Railway Company, a corporation engaged in transporting interstate commerce, alleging a violation of the act of Congress approved February 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154], entitled "An act to regulate commerce," and of the several acts amendatory and supplementary thereto. In the petition the other defendants were named as parties which had profited by the alleged unlawful discrimination against the relator, and they were therefore made parties, that they might appear and protect their interests.

138 F.—54

The main averments of the petition, omitting certain special allegations, which, under the view of the case taken by me, have no pertinency upon the present motion, are briefly: That the defendant railway company is a railroad corporation operating a railroad in the states of Virginia, West Virginia, and Ohio, and is engaged in interstate commerce. That the other defendants are corporations organized under the laws of West Virginia, and are engaged in mining and shipping coal from points along the line of the railway company in West Virginia. That the relator is a like corporation, and engaged in a like business of mining and shipping coal from a point on the line of the railway company in McDowell county, W. Va., to various markets in other states than the state of West Virginia. "That on the 1st day of April, 1904, and previous thereto, the defendant railway company agreed with the Greenbrier Coal & Coke Company, and all of the other coal companies herein mentioned as defendants, that the car supply upon which said coal companies were to ship their coal and coke to market should be furnished upon what was and is known in the particular coal field where said mines are located as the 'coke-oven basis.' That is to say, the coke ovens owned and operated by the respective coal shippers along its line were to form the basis of car distribution, and that the car supply furnished by the said railway company between the respective coal shippers mentioned herein should be distributed to each shipper in proportion as the number of coke ovens owned and operated by such shipper bore to the whole number of cars available for the shipment of coal from said field." That the relator owned and operated 200 such coke ovens, and the defendant coal companies respectively operated the numbers of coke ovens given in the petition, aggregating 9,307 in all. That "said agreement and understanding to supply cars for the shipment of coal and coke upon said coke-oven basis was and is equitable and fair, and accepted by the relator and the other defendant coal companies, and according to which said basis of car supply the Greenbrier Coal & Coke Company was since the 1st day of April, 1904, and is now, entitled to two and one-eleventh per cent. of the total number of coal and coke cars furnished by said railway company for the shipment and distribution of coal and coke to said markets from the mines of the relator and the said defendant coal companies. That on the day and year last aforesaid, and since that time, it was always agreed and understood by and between said railway company, the relator, and the said defendant coal companies that cars and facilities for the transportation of coal mined and coke manufactured at the mines of the relator would be furnished by said railway company according to said basis of distribution, and that, if there should be a scarcity of cars, there would be no discrimination in the distribution of the same to the several miners and shippers of coal along the lines of the defendant railway company, but the same would be prorated between the relator and the other defendant coal companies according to said coke oven basis." That the relator has made repeated demands upon the railway company for cars for shipment of its coal to various points

without the state of West Virginia; that the railway company has discriminated and is still continuing to discriminate unjustly in favor of the defendant coal companies and against the relator, by giving to said defendant coal companies an undue and unreasonable proportion of cars for the transportation of coal and coke, and giving to relator much less than the fair proportion of cars justly due it. That in consequence of such discrimination the relator has suffered great loss and damage, and is unable to retain the services of its miners and employés, and is subjected to loss of custom and to threatened suits for damage, etc.

Upon the presentation of the petition an alternative writ of mandamus was awarded, agreeably to the practice prevailing in West Virginia, returnable on the 6th day of June, 1905, at which time the parties appeared, and a motion was duly interposed on behalf of the principal defendant, the railway company, and certain of the other defendants to quash the alternative writ, and each paragraph thereof. This motion is in writing, and in substance alleges that the facts and allegations set up in the alternative writ (which, under the practice prevailing in this state, contains all the averments of the petition) do not set forth a case of which the court has jurisdiction under the act of March 2, 1889, c. 382, 25 Stat. 855 [U. S. Comp. St. 1901, p. 3157]. It is contended in support of the motion that the writ shows that the relator is seeking to enforce an alleged agreement with the railway company for the distribution among its shippers of its coal cars available for use in the coal field where the mines of the relator are situated, and not for the enforcement of the provisions of the so-called interstate commerce act in the manner provided by the act of March 2, 1889, and that the court therefore has no jurisdiction to award the writ.

I have already quoted the averment of the writ (and petition) setting up the existence of an agreement between the railway company, the relator, and the defendant coal companies for the distribution of coal cars in accordance with what is termed the "coke-oven basis." I now quote the language of the first command of the alternative writ, which is based on the first prayer of the petition therefor, and is as follows:

"That in the event of the scarcity of cars to be furnished by you, the said Norfolk & Western Railway Company, to shippers of coal along your lines, the proportion to which the said Greenbrier Coal & Coke Company is entitled shall be fixed and determined to be at least two and one-eleventh per cent. of the total car supply furnished to such shippers in the particular field wherein its mine is located, or whatever percentage of the whole number of cars furnished to the shippers of coal in the field where its mine is located the total number of coke ovens owned and operated by it bears to the whole number of coke ovens owned and operated by the other shippers of coal from said coal field."

It is admitted that, except as conferred by statute in special cases, the courts of the United States have no original jurisdiction in mandamus, but their only power to issue the writ is in aid of jurisdiction already acquired. See Graham v. Norton, 15 Wall. 427, 21 L. Ed. 177; Bath Co. v. Amy, 13 Wall. 247, 20 L. Ed. 539; and the recent case of U. S. ex rel. Interstate Commerce Commissioners v.

Lake Shore, etc., Ry. Co. (decided by the Supreme Court April 10, 1905) 25 Sup. Ct. 538, 49 L. Ed. 870, in which it was held that jurisdiction "in a federal Circuit Court of an original proceeding by mandamus to compel an interstate carrier to make the report which the Interstate Commerce Commission is authorized by the act to regulate commerce to require cannot be inferred from the grant of authority to the commission to enforce that act, or from the direction to district attorneys of the United States or the Attorney General to institute all necessary proceedings for the enforcement of its provisions."

The only authority, then, for the exercise of jurisdiction by way of mandamus in a case like the present, is to be found in the act of March 2, 1889, supplementary to the Interstate Commerce Act and its amendments, and which provides:

"That the Circuit and District Courts of the United States shall have jurisdiction upon the relation of any person or persons, firm, or corporation, alleging such violation by a common carrier, of any of the provisions of the act to which this is a supplement and all acts amendatory thereof, as prevents the relator from having interstate traffic moved by said common carrier at the same rates as are charged, or upon terms, or conditions as favorable as those given by said common carrier for like traffic under similiar conditions to any other shipper, to issue a writ or writs of mandamus against said common carrier, commanding such common carrier to move and transport the traffic, or to furnish cars or other facilities for transportation for the party applying for the writ."

It is equally elementary that mandamus will not lie for the enforcement of mere private contractual obligations. Miller v. State Board of Agriculture, 46 W. Va. 192, 32 S. E. 1007, 76 Am. St. Rep. 811; State v. Paterson, etc., R. R., 43 N. J. Law, 505, affirmed 45 N. J. Law, 186; Rosenfeld v. Einstein, 46 N. J. Law, 479; State v. N. O., etc., R. Co., 37 La. Ann. 589; State v. Zanesville, etc., Turnpike Co., 16 Ohio St. 308; State v. Howard Co. Court, 39 Mo. 375; State v. Republican River Bridge Co., 20 Kan. 404; People v. Dulaney, 96 Ill. 504; Parrott v. Bridgeport, 44 Conn. 180, 26 Am. Rep. 439; Bailey v. Oviatt, 46 Vt. 627; High on Extraordinary Remedies, § 25; Merrill on Mandamus, § 16; Spelling on Injunctions & Other Extraordinary Remedies, § 1379.

It is unquestionably true that the pleadings of the relator do set up the existence of an agreement between the railway company, the relator, and the defendant coal companies for the distribution of all the coal and coke cars of the railway company available for shipments of coal and coke from the coal field where the mine of the relator is situated, and that the petition prays, and the writ nisi, following its prayer, commands, that the railway company be required to furnish the relator with cars in accordance with the terms of that agreement. It is a cardinal principle that pleadings should be true, and upon this motion to quash, which is in the nature of a demurrer for want of jurisdiction apparent upon the face of the pleadings, the allegations of the writ and petition are to be conclusively taken to be true. We have it then, for the present purposes, as a fact, that such a private and general agreement for

car distribution was made and entered into, and, as alleged by relator, has not been kept by the railway company.

It is ingeniously argued by counsel for the relator that the facts set forth as to the agreement for distribution of cars are merely by way of recital, and that, inasmuch as it is alleged that said agreement provided for a fair and equitable distribution of the car supply, it was in harmony with, and merely declaratory of, the requirements of the interstate commerce act, and where, as in this case, there is an averment of dereliction of duty under the act, the court is empowered and it is its duty to assume jurisdiction and issue the writ. The question presented is somewhat novel, but the view of counsel for relator presents some difficulties to my mind. I consider that it must be true that in any investigation of alleged discrimination in car supply, under the interstate commerce act, made by this court upon the relation of a shipper of interstate traffic, it is not only competent, but necessary, for the court to hear evidence concerning and render its independent judgment upon the question as to what proportion of the cars available for interstate traffic the relator is entitled to, and upon such finding to issue its peremptory writ, commanding the respondent to furnish the car equipment found to be the share or allotment justly due the relator. Now, in the case at bar, assuming that the allegations of the petition are true, and that the respondent, in its return, should affirm the existence of the agreement asserted in paragraph 5 of the petition and alternative writ, and aver that it had furnished relator with such proportion of cars as said agreement provided for, nothing would be left for ascertainment, under the pleadings, except the bare fact whether the respondent had in fact furnished to the relator its due proportion of cars under the agreement recited in the petition. In other words, there would be left no issue upon which evidence could be taken as to whether the relator had received its due proportion of cars for interstate traffic under the law, or what that due proportion was. But assuming that the court undertook to brush aside the mere state of the pleadings, and to make its own inquiry as to facts and conditions; following, let us say, the recent case of U. S. ex rel. Kingwood Coal Co. v. West Virginia Northern R. Co. (C. C.) 125 Fed. 252, and arriving at the due proportion of cars for relator by an investigation of the relative capacity of all the coal companies interested in the distribution, what would be the result? In the event that the proportion thus ascertained exactly tallied with the proportion due relator under the contract, the court might, it is true, award its peremptory writ, but in any other contingency I do not see how it could do so. As it appears by the record that all the parties interested in the distribution of these cars entered into an agreement for such distribution according to an arbitrary basis, which agreement, as between themselves, they had a right to make, I can see no ground upon which the court could award any writ impairing the obligation of that agreement. If I am right in this view, it follows that the court could act by way of mandamus only in so far as its findings coincided with the terms of the said agreement, and a proceeding by

way of mandamus under the statute in name, would in fact be merely a proceeding to enforce by peremptory writ the execution of such agreement or contract. If a contract exists, that contract measures the duty of the railway company, for it is surely true that a shipper need not take all the cars he may be entitled to under the provisions of the law. If no contract exists, the shipper may demand under the law, and the law measures the duty of the railway company by those general principles adopted by the courts for guidance in its ascertainment.

Has the court a right to entertain jurisdiction for the purpose of determining whether or not a valid agreement exists, where the existence of such an agreement is asserted by the relator? This is not the case of a relator asserting the invalidity·of a contract it was induced to make, and asserting its rights under the statute, but of one asserting the validity and essential legality and equality of ·the contract under the law, and seeking its enforcement by aid of the writ. Neither is this such a case as would be presented upon a petition declaring simply upon the statutory rights of relator, and asserting that under the law it was entitled to a certain number or a certain percentage of all cars available for interstate coal traffic. If in such a case the return of respondent asserted a contract between the parties regulating the question of car supply, and the relator replied generally to such return, the court would, of course, inquire into the existence and legality of such contract. If it were found to exist and to be legal, the court would be bound to dismiss the proceeding. If found not to exist or to be illegal, the court would administer relief. But suppose the relator, instead of replying generally to such a return, were to admit the existence and legality of the contract pleaded by respondent. We would then have a case much like the one at bar, save that the question would arise later in the proceeding. Such a case has arisen under the interstate commerce act, though not in a proceeding by way of mandamus, and has been passed upon by a very able judge, then chairman of the Interstate Commerce Commission, namely, the late Judge Cooley, of Michigan. In Haddock v. Delaware, L. & W. R. Co., 4 Interst. Com. Com'n R. 296, where complainant, a miner and shipper of anthracite coal, complained of a preference in the rates given for carriage of coal, the company set up as a defense that complainant was not entitled to be heard, because he had entered into a contract with the defendant before the passage of the statute by which the rates were determined. Complainant admitted the contract, but contended that certain sizes of coal which were not marketed when the contract was entered into ought not to be governed by the terms of the contract, but the commission held that no evidence could be admitted to show that the rates on such coal ought to be different from those fixed in the contract; Judge Cooley, in the opinion (page 314) saying:

"If the rate of transportation were not fixed by contract, we might have jurisdiction to determine what it ought to be; but, when the contracts before us made by the parties themselves have undertaken to determine how the rates shall be fixed, that matter is taken entirely out of our hands. We say

this assuming all the while that the contracts are valid, just as the parties assume them to be, and expressing no opinion for ourselves on that point."

I might almost paraphrase this language and apply it to this case, for, doubtless, if the question of car supply were not fixed by agreement, and complaint was made of a violation of duty under the interstate commerce act, the court might have jurisdiction to determine what the car supply of the relator ought to be; but when the relator asserts an agreement which it says is fair and equitable, by which the parties have undertaken to determine how the cars shall be distributed, that matter is taken out of the hands of the court; and, even though there may have been a breach of that agreement by the respondent, this court is powerless to aid the relator by the writ of mandamus.

I am of opinion that the pleadings herein do not present a case for relief under the act of March 2, 1889, and accordingly order that the alternative writ heretofore issued herein be quashed, and the petition dismissed.

Let an order be entered in conformity with this opinion.