[No. 3501.   Decided December 10, 1900.]

MORRIS & WHITEHEAD, Bankers, *Appellant,* v. W. R. WILLIAMS *et al., Board of Commissioners of Pacific County, Respondents.*

MANDAMUS—TO COUNTY COMMISSIONERS—ENFORCEMENT OF CON-
TRACTUAL OBLIGATIONS.

Mandamus will not lie to compel a board of county commissioners to issue funding bonds which they had contracted to sell, when the contract is an executory one, and when the funding proposition has not proceeded beyond the discretionary stage, or, in other words, has not been so far concluded as to leave them only a ministerial duty to · perform in connection with their issuance.

Appeal from Superior Court, Pacific County.—Hon. ABRAHAM L. MILLER, Judge.   Affirmed.

*R. E. Moody* and *Hewen & Stratton,* for appellant.

*John T. Welsh,* Prosecuting Attorney, and *F. S. Thorp,* for respondents.

The opinion of the court was delivered by

DUNBAR, C. J.—At a special session of the board of county commissioners of Pacific county, in August, 1898, said commissioners entered into a contract with Morris

& Whitehead, Bankers, appellant herein, whereby they agreed to issue and deliver to appellant the bonds of the county of Pacific in the sum of $44,000, or so much thereof as should be necessary to fund the existing general fund warrant indebtedness of said county as evidenced by certain warrants. It is insisted by the respondents that this contract was entered into by the commissioners while sitting as a board of equalization, but we have not found it necessary to enter into an examination of that question. It was provided in said contract that the bonds were to be dated the 1st of September, on which date, or as soon thereafter as possible, they were to be ready for delivery. They were to be due in twenty years from date and were to draw interest at the rate of five per cent. per annum. Among other provisions in the contract, the following appears:

"The party of the first part [respondents] shall cause all of said warrants to be funded to be called for payment; provided, however, that no such call shall be made until the party of the second part [appellant] has notified the party of the first part as hereinafter set forth.

That said bonds are a valid and legal obligation to the satisfaction of the party of the second part, and has designated to the party of the first part what warrants are valid and can legally be funded.

The bonds shall be a legal and valid obligation to the satisfaction of the attorney of the party of the second part.

The party of the second part shall be allowed a reasonable time to obtain the opinion of its attorney on the validity of the said bonds, and, when said opinion is obtained, shall immediately notify the party of the first part of the purpose of such opinion.

The party of the second part shall pay the holders of the warrants the full value thereof, and thereafter present such warrants to the county treasurer for cancellation, and an equal amount of bonds shall then be delivered to the party of the second part."

On October 5, 1898, the board of county commissioners sent the following telegram to appellant:

"South Bend, Wash., Oct. 5, 1898.
Morris & Whitehead, Bankers,
    Portland, Oregon.
When will bonds be ready? Board in session. Answer.
A. P. Leonard, County Auditor and Clerk of Board of County Commissioners."

To this telegram the following answer was received on October 1:

"Moody promises answer tomorrow. He has just returned from New York."

On the following day the commissioners received the following telegram:

"Portland, Oregon, Oct. 7, 1898.
It will be necessary to validate warrant debt. Have commissioners meet immediately,—today, if possible,—and pass resolution in manner provided in act on page 44 of Session Laws of 1895, and then, if resolution is passed, give notice provided in said act by publication, and submit at general election. Eastern authorities hold that this must be done.
                    Morris & Whitehead, Bankers."

Acting on this direction, the board of county commissioners submitted the question of the validation of the warrants to the voters of Pacific county, and the voters refused to validate the same. Nothing further was done in the premises until the 16th of January, 1899, when the appellant tendered the board of commissioners blank bonds and demanded that they be executed, but did not tender any money to take up the warrants, and did not take up or pay any of them. The commissioners refused to sign or execute the bonds. Whereupon appellant filed a petition in the superior court of the state of Washington for Pacific county for a writ of mandamus to compel said commissioners to issue and deliver to appellant said

bonds. A demurrer to the petition was interposed by the respondents, which was overruled. Respondents filed an answer. The case was tried, and judgment was rendered in favor of the county, refusing the writ. From this judgment an appeal was taken to this court.

Respondents urge several reasons why the judgment of the court should be affirmed, but there is one reason lying at the threshold of the case, which, if sustained, will render a discussion of the others unnecessary. It is insisted by the respondents that an action in mandamus will not lie in this kind of a case. It may be stated primarily that the writ of mandamus is most commonly invoked as a remedy for the misconduct or inaction of public officers, and is granted to set in motion and compel action on the part of public officers charged with the performance of duties of a public nature. It is doubtless well settled that, when the law imposes upon a public officer the performance of a specific act or duty, such performance may, in the absence of other adequate remedy, be enforced by mandamus; or, in other words, the writ will issue to compel the performance of purely ministerial duties made incumbent upon the officers by operation of law. But the rule is otherwise, when the officer is invested with discretion and the functions are not ministerial. In such cases the writ will not issue to control the discretion of the officer. It is equally well settled that the writ will not issue in aid of the enforcement of private contractual rights. These general principles, we think, are so universally recognized that citation of authority is not called for. The trouble is to make their application to the multifarious groups of facts presented in the adjudicated cases. Several cases have been cited by appellant to sustain the contention that the writ should issue in this case. The first is *Smalley v. Yates,* 36 Kan.

519 (13 Pac. 845), where it was held that mandamus lies in all cases where the plaintiff has a clear legal right to the performance of some official or corporate act by a public officer or corporation, and no other adequate, specific remedy exists. The city, through its mayor and council, had entered into an agreement to execute and deliver to a lawful purchaser thereof certain waterworks bonds of the city, which had been duly carried by a vote of the electors of the city, and the purchaser of such bonds had fully complied with all the terms of the agreement on his part, but the mayor and council refused to comply with their official duty in that respect. The court held that mandamus would lie to compel the mayor and council to execute and deliver the bonds to the purchaser of the same according to the terms of agreement between the parties. This is the strongest case presented in the authorities cited by the appellant, but we do not think that it reaches the case under discussion, even if the general principles which it announces can be sustained by authority, which, we think, is doubtful. But in this case, after a vote of the electors of the city, the action of the mayor and council in delivering the bonds to the purchaser became purely ministerial. The law directed them to execute and deliver these bonds when a certain condition had been performed, which condition had been performed, viz., a vote of the electors of the city.

But in the case at bar there is no ministerial duty devolving upon the commissioners to sell the bonds of the county to this appellant. The appellant's claim here is based upon a contractual agreement; and whether the bonds were to have been issued under the act of 1890 or under the act of 1895, as seems to have been indicated by the direction of the appellant to the board of county commissioners in its telegram of October 8th, discretion

is vested in the county commissioners. If under the former, the board was simply authorized to negotiate the bonds under their general supervisory powers over the business of the county, but there is no mandate of the law compelling or directing them to do so; if under the latter, the board has the right to reject all bids which are offered. Appellant's citation from High on Extraordinary Legal Remedies (3d ed.), § 333, is as follows:

"Mandamus will lie to prevent a municipal officer from setting at naught the will of the corporation by refusing to carry out its instructions."

The instance is given that when a city has, through its common council, directed the purchase of certain lands and that payment therefor be made in bonds of the corporation, but the officer whose duty it is to deliver the bonds refuses so to do, sufficient cause is presented for relief by mandamus. This merely falls within the general proposition above stated that mandamus will lie to compel the performance of a ministerial duty. Another example given by the author is that, when it is the duty of the mayor and council of a city to execute and deliver to a purchaser bonds of a city which have been authorized for the construction of waterworks, the performance of this duty may be required by mandamus; citing *Smalley v. Yates,* just above discussed.

The next citation of appellant, viz., *People ex rel. Taylor v. Brennan,* 39 Barb. 522, is the case upon which is based the first announcement made by High in § 333, *supra.* This is the case in which it was announced that, where an officer of a municipal corporation undertakes to set at naught the corporate will by refusing to execute or deliver the bonds of the corporation in payment of the price of lands purchased by the corporation, a mandamus is the appropriate and proper remedy. The con-

troller of the city was directed by resolution of the common council of the city of New York to issue corporate bonds for the purchase money of some lands, which he refused to do. Of course, his duty was purely ministerial. The city had acted in the premises and directed him what to do. He was an officer without any discretion, and his duty was to comply with the mandate of the city council. Refusing so to do, under all authority mandate would lie to compel him.

The other cases cited by the appellant, without specifically reviewing them, are of the same character. The following announcement of the law is made by High on Extraordinary Legal Remedies (3d ed.), § 34:

"An important distinction to be observed in the outset, and which will more fully appear hereafter, is that between duties which are peremptory and absolute and hence ministerial in their nature, and those which involve the exercise of some degree of official discretion and judgment upon the part of the officers charged with their performance. As regards the latter class of duties, concerning which the officer is vested with discretionary powers, while the writ may properly command him to act, or may set him in motion, it will not further control or interfere with his action, nor will it direct him to act in any specific manner. But as to the former class of cases, where mandamus is sought to compel the performance of a plain and unqualified duty, concerning which the officer is vested with no discretion, a specific act or duty being by law required of him, the writ will command the doing of the very act itself."

In § 43, in further discussion, it is said:

" *  *  *  And when the official duty  *  *  involves the necessity upon the part of the officer of making some investigation, and of examining evidence and forming his judgment thereon, a proper case is presented for the application of the rule. Thus, when the question involved was whether the relator, a printer to the senate of

the United States, was entitled to receive from the superintendent of public printing and to print certain public documents, and in determining the question of relator's right it was necessary for the superintendent to investigate the usages and practice of congress upon the subject, and to examine evidence before forming his ultimate judgment, it was held that the duty was so far judicial in its nature that its performance could not be controlled by mandamus."

Section 48 reads:

" * * * So when a board of state officers are intrusted by law with the letting of contracts for the public printing of the state, and are vested with certain discretionary powers in determining what bids shall be accepted, the courts will not interpose by mandamus to control such discretion."

It would seem that under the statutes of this state in relation to the sale of bonds, the commissioners were granted fully as much discretion as were the officers mentioned by Mr. High. That author also, in § 25, says:

"From the nature of the remedy as thus far disclosed, it is obvious that it relates only to the enforcement of duties incumbent by law upon the person or body against whom the coercive power of the court is invoked. It is not, therefore, an appropriate remedy for the enforcement of contract rights of a private or personal nature; and obligations which rest wholly upon contract, and which involve no question of trust or of official duty, can not be enforced by mandamus. A contrary doctrine would necessarily have the effect of substituting the writ of mandamus in place of a decree for specific performance, and the courts have, therefore, steadily refused to extend the jurisdiction into the domain of contract rights."

Appellant does not claim any right here under the statute, but, if it has any rights at all, they grow out of the contract which it alleges it made with the commis-

sioners in relation to these bonds. So far as it is con-
cerned, it is a contract right of a private and personal
nature; a right accruing to it not by reason of any of the
provisions of the law, but by reason of a special contract
which it made with the commissioners. If an individual
takes to an auditor or other filing officer a deed or other
instrument which, under the law, he is entitled to have
recorded, and such filing officer refuses to record the same
when the applicant has complied with the law by the pay-
ment of fees or otherwise, the applicant has a right, not
by virtue of any contract with the officer, but by virtue
of the law; to have the instrument recorded, and manda-
mus will lie to compel the performance of that public
duty on the part of the recording officer. Instances of
this kind can be multiplied indefinitely, and in all such
cases the remedy is by mandamus.

But such is not the case here. It is true that the com-
missioners have a right, under certain circumstances, to
sell these bonds. They also have a right, under their
general supervisory powers, to contract with indi-
viduals for supplies for fuel and stationery; but
if, after having entered into a contract of that
kind, they refuse to pay for such supplies, it would
not be maintained that mandamus was the proper
remedy for the enforcement of the contract. We know of
no good reason why a contract in relation to the sale of
bonds should be excepted from the general rule in relation
to contracts made by the commissioners. This contract
is still further removed from the operation of the rule
invoked by the appellant, for the reason that it is plainly
an executory contract which was entered into. Some-
thing remained to be done or ascertained. In the first
place, the validity of the warrants was to be passed upon
before the contract could be executed. In the second

place, by direction of the appellant itself, ratification of the voters at an election held for that purpose was necessary. We think there is no authority which would sustain the issuance of the writ on a contract of this kind. The case of *State v. Republican River Bridge Co.,* 20 Kan. 404, where it was held that an obligation arising upon contract merely could not be enforced by mandamus, indicates that the court of that state did not intend in the case of *Smalley v. Yates, supra,* to hold that the relator in that instance was entitled to the writ of mandamus because of a contract that he had entered into, but because the action of the mayor and council had become ministerial after the direction by the voters of the city.

A case which, it seems to us, corresponds almost exactly with the one under discussion is *State ex rel. Bohannon v. County Court of Howard County,* 39 Mo. 375. Under the statute, counties were authorized to pay bounties to volunteers enlisting in the military service, and it was held that where, in pursuance of the act, a county offered bounties to parties volunteering to fill the quota, a contract existed between the county and such volunteers, which could be enforced by action; and that the courts will not undertake by writ of mandamus to enforce simple common-law rights between individuals. In that case the petitioner enlisted as a volunteer in pursuance of an order of the county court of said county appropriating money for the purpose of paying bounties to volunteers. The county court refused to pay a portion of the money due the petitioner, whereupon he prayed for a writ of mandamus to compel the court to proceed in the business of selling bonds which had been provided for the purpose of paying these bounties, and to pay him the remainder of his bounty. After holding, upon the merits of the case, that the petitioner was entitled to his pay, the

court, of its own motion, raised the question under discussion here, and said:

"But there is another question which we cannot pass over, and that is, whether a mandamus is the proper remedy. According to the views above stated, there was a binding contract between the county and the petitioner. The courts will not undertake to enforce by mandamus simple common law rights between individuals, as to compel the payment of money, nor where there is another specific legal remedy."

And the writ was refused.

In *Parrott v. Bridgeport,* 44 Conn. 180 (26 Am. Rep. 439), which involved a contractual relation between the petitioner and the city of Bridgeport, it was held that the case involved the enforcement of contract rights of a private nature, and the writ could not lie. See, also, *Florida, C. & P. R. R. Co. v. State,* 34 Am. St. Rep. 30 (13 South. 103, 20 L. R. A. 419) ; Merrill, Mandamus, § 16, and authorities cited and instances mentioned.

It is insisted by the appellant that the writ ought to issue in this case because it would be difficult to determine the damages which the appellant would be entitled to by reason of the breach of contract. The proof of damages is always attended with more or less difficulty, but that furnishes no reason for reversing the well-established rule that the writ will not lie for the enforcement of a contract right.

The conclusion that we have reached on this proposition renders unnecessary an investigation of the other defenses interposed to the action.

The judgment is affirmed.

REAVIS, FULLERTON and ANDERS, JJ., concur.