[No. 31992. *En Banc.* March 27, 1953.]

THE STATE OF WASHINGTON, *on the Relation of Hugo Scho-blom, Appellant,* v. ANACORTES VENEER, INC., *Respondent.*[1]

[1]Reported in 255 P. (2d) 379.

*Wright & Wright,* for appellant.

*John N. Cheney* and *Welts & Welts,* for respondent.

WEAVER, J.—This action is based upon the application of relator (appellant) for a writ of mandate to require respondent corporation (1) to employ appellant in its plywood mill; and (2) to deliver to him the salary he would have received (less his earnings elsewhere) had he been employed at the time he requested employment.

Two questions are presented. First, is the contract one which a court will enforce by writ of mandate or decree of specific performance? Second, is the appellant entitled to the wages he would have received (less his earnings elsewhere) had he been employed by respondent?

Respondent was organized in 1939 under the uniform business corporation act. In several respects, it differs from the usual business corporation. The by-laws provide a preferential right to employment for certain stockholders, and limit the voting power of a stockholder to twenty votes, regardless of the number of shares owned.

Since July 21, 1945, appellant has been the registered owner of twenty shares of class A common stock of respondent corporation. On July 18, 1950, appellant made written application for employment.

The by-laws germane to our discussion are:

"Art. I, § 8 (a) The owner of 20 or more shares of Class A stock and/or the owner of 25 or more shares of Class B stock shall be *eligible* for employment by the corporation and shall have the first *preference* right of employment." (Italics ours.)

"Art. I, § 9 (b) Nothing herein contained shall take from the ʟDirectors the right to employ other than shareholders or to discharge one or more employees, although shareholders, with or without cause, which, in their discretion, is necessary for the best interest of the corporation."

The trial court concluded that it would be "futile for the court to issue a Writ of Mandate requiring the directors to employ the relator," and denied his application. We believe the trial court correct in its conclusion.

█ The by-laws established a contractual relationship concerning employment between the corporation and its stockholders. Between appellant and respondent, it is a private contractual right.

██ Although a writ of mandate may issue to compel admission of a party to a right to which he is entitled, and from which he is unlawfully precluded (RCW 7.16.160; Rem. Rev. Stat., § 1014), the writ will not be granted where there is available a plain, speedy, and adequate remedy in the ordinary course of law. RCW 7.16.170; Rem. Rev. Stat., § 1015. It is well settled that mere private rights, enforcible at law or equity, will not be aided in this manner. Specifically, when no public interest is involved, courts will not substitute the writ of mandate for the remedy of specific performance.

In *Morris & Whitehead v. Williams*, 23 Wash. 459, 63 Pac. 236, we quoted with approval from High, Extraordinary Legal Remedies (3rd ed.), § 25:

" ' . . . It [mandamus] is not, therefore, an appropriate remedy for the enforcement of contract rights of a private or personal nature; and obligations which rest wholly upon

contract, and which involve no question of trust or of official duty, cannot be enforced by mandamus. A contrary doctrine would necessarily have the effect of substituting the writ of mandamus in place of a decree for specific performance, and the courts have, therefore, steadily refused to extend the jurisdiction into the domain of contract rights.' " (p. 466)

We further said:

"It is equally well settled that the writ will not issue in aid of the enforcement of private contractual rights." (p. 462)

To the same effect is *State ex rel. Krutz v. Washington Irr. Co.,* 41 Wash. 283, 83 Pac. 308.

We reach the same conclusion if we consider appellant's prayer for relief as one for specific performance.

It must be borne in mind that Art. I, § 9(b) authorizes the directors to employ other than shareholders, and to discharge even those who are shareholders *without cause.* (After this action was commenced, the directors adopted a resolution to "cause Hugo Schoblom to be discharged the day following his employment, if employed, with the Anacortes Veneer, Inc.")

2 Restatement, Contracts, 698, § 377:

"Specific enforcement will not be decreed against a party who has the power of terminating his contractual duty and thereby substantially nullifying the effect of the decree.

"Comment: (a) A party to a contract may have the power of termination by reason of a provision in the contract or by reason of some rule of law applicable to such contracts. If the provision is such as to make the party's promise illusory, there is no duty created (see § 2); *but even if it is not illusory, specific performance will not be decreed against one whose power of termination can be exercised so as substantially to nullify the effect of the decree.* The extinguishment of such a power may sometimes properly be decreed against one who is himself seeking specific performance, but not against a defendant who is refusing to perform." (Italics ours.)

If Art. I, § 9 (b) of the by-laws is removed from our consideration, the contract for personal services is still one which equity will not specifically enforce by decree. The relationship between parties, as established by the by-laws,

is of such a nature that a court cannot enforce it against an unwilling party with any hope of ultimate or real success. See the annotation, "Enforcement of contracts of service by courts of equity," appearing in 6 L. R. A. (N.S.) 115 at 1126.

It is impossible for a court to conduct and supervise the operations incident to and requisite for the execution of a decree for the specific performance of a contract which involves rendering personal services. To attempt to do so would be futile. Equity will not decree an act which will not serve a useful purpose. *State ex rel. Tacoma v. Rogers,* 32 Wn. (2d) 729, 203 P. (2d) 325.

In an exhaustive annotation by M. C. Dransfield entitled "Specific performance of contract for services," appearing in 135 A. L. R. 278 at 285, the author states:

"The general rule that a contract of service will not be specifically enforced is well established by the authorities."

The statement is supported by case authority from thirty-eight jurisdictions.

Therefore, the trial court did not err when it refused to issue the writ.

Having determined that the writ of mandate cannot issue, we do not reach the second question raised by relator.

There remain appellant's first three assignments of error to consider. They are directed to the admission of certain exhibits and evidence. No error is assigned to any finding of fact. In the absence of such an assignment, required by Rule on Appeal 43, 34A Wn. (2d) 47, as amended, we cannot review errors claimed in the *admission* of evidence for "all evidence *admitted,* whether properly or improperly, is merged in the court's findings." *Kitsap County Bank v. United States Fidelity & Guaranty Co.,* 90 Wash. 12, 18, 155 Pac. 411; *Jones v. Bard,* 40 Wn. (2d) 877, 246 P. (2d) 831; *Simpson v. Hutchings,* 41 Wn. (2d) 287, 248 P. (2d) 572. Therefore, the assignments of error are not well taken.

The judgment is affirmed.

HILL, HAMLEY, DONWORTH, and OLSON, JJ., concur.

MALLERY, J., dissents.

FINLEY, J. (concurring in the result)—In this case, the question of the stockholders' alleged rights to employment must be determined on the basis of the interpretation to be given those provisions of the corporate by-laws which read as follows:

"Art. I, § 8 (a) The owner of 20 or more shares of Class A stock and/or the owner of 25 or more shares of Class B stock shall be eligible for employment by the corporation and shall have the first preference right of employment."

"Art. I, § 9 (b) Nothing herein contained shall take from the Directors the right to employ other than shareholders or to discharge one or more employees, although shareholders, with or without cause, which, in their discretion, is necessary for the best interest of the corporation."

One purpose in the organization of the corporation was to provide a "make work" program for stockholders. Certainly, one other purpose was the establishment of an efficient, sound, and successful business operation. There is some possible inconsistency in the two concepts, particularly if one or the other, or both, should be emphasized to an extreme degree. The above-quoted by-laws were drawn in an effort to provide for the "make work" idea, and also for the idea of sound business management. Consequently, inherent in the by-laws is the possible inconsistency, heretofore mentioned. Perhaps there was considerable sales talk regarding employment rights in connection with the sale of corporate stock and the raising of funds to finance the particular corporate promotion. Whatever the sales talk may have been, attention must be focused upon the applicable provisions of the by-laws, as pointed out above, in determining just what, if any, employment rights are acquired through the purchase of stock.

In one sense, it could be said that the promise respecting employment rights, contained in Art. I, § 8 (a), is illusory because the language of Art. I, § 9 (b), in effect, as a practical matter, cancels out any employment rights. However, it seems more apt that the promise of employment rights should be characterized as *bona fide* rather than illusory, but nevertheless subject to certain conditions and limitations,

namely, the exercise of discretion by the directors in the interest of sound business management. In other words, a stockholder may be eligible and have some preference as to employment rights without such rights being absolute in nature. Certainly, if it had been intended to confer absolute rights to employment, the by-laws might easily have so provided. The key to this seeming dilemma lies in placing proper emphasis upon the provisions of Art. I, § 9 (b), which permit the exercise of discretion and sound business judgment by the board of directors in personnel and employment matters. This may seem severe and undesirable as to Mr. Schoblom, but at the same time it may be most desirable, generally, as to other stockholders, particularly in terms of their interest that the corporation be successful in a business sense.

Art. I, § 9 (b), permits the corporate directors to employ *other than stockholders*, if, in their discretion, such is in the best interests of the corporation. Applicants for employment, other than Mr. Schoblom, the appellant, would fall either in the category of (a) stockholders, or (b) nonstockholders. As to the stockholders, Mr. Schoblom would have equal preference rights but no seniority or priority; consequently, the corporation could employ other stockholders than Mr. Schoblom, whether they were under or over forty-five years of age, and he could not complain. As to nonstockholders, under Art. I, § 9 (b), the corporation could employ only those under forty-five years of age as against giving employment to Mr. Schoblom and he still could not complain, because Art. I, § 9 (b) permits the directors to employ other than stockholders, if, in their discretion, such is in the best interests of the corporation. It would be difficult to show that the rule to employ men under forty-five years of age was not sound from the standpoint of business efficiency in a plant of the kind here involved, or that such rule constituted breach of trust or abuse of discretion, considering the language of the by-laws, above quoted. Lastly, if the corporation employs neither additional stockholders nor nonstockholders, it is difficult to see how Mr. Schoblom could complain.

After careful analysis of the above-quoted provisions of the by-laws, it is my feeling that Mr. Schoblom has some preference regarding employment rights; that these are not absolute in nature but, on the contrary, are subject to the exercise of discretion and sound business judgment by the directors. For the reasons stated herein, I believe the majority opinion reaches the correct result.

SCHWELLENBACH, J., concurs with FINLEY, J.

GRADY, C. J. (concurring)—I concur in the result reached by the majority opinion, but upon the ground that section 9 of the by-laws so modifies section 8 as to make it ineffectual if the directors of the corporation choose to defeat the purpose of that section by recognizing the preference right of employment and then immediately discharging the preferred stockholder-employee. The record indicates that the directors intend to exercise the authority given by section 9 if the corporation is compelled by court decree to give appellant his preference right provided by section 8. If we had section 8 only to consider, I would be of the opinion that our statutory mandamus RCW 7.16.150 and 7.16.160 would be available to appellant to compel the corporation to accord to him the right given by section 8 of the by-laws. The applicable part of the statute is as follows:

"The writ of mandamus . . . may be issued . . . to any . . . corporation . . . to compel the admission of a party to the use and enjoyment of a right . . . to which he is entitled, and from which he is unlawfully precluded by such . . . corporation . . . ."

This statute refers to such a right as appellant acquired when he became a stockholder and affords him a remedy if such right is denied to him. In applying the statute, we must not be led afield by common-law concepts of the scope and purpose of mandamus. This has happened in some of our cases when we have adopted and quoted from texts and excerpts from cases not voicing the ideas on the subject of mandamus expressed by the statute.

I find no reason to explore the field of specific performance because it is not the remedy appellant has sought. He has

instituted a statutory mandamus proceeding, but is unable to vindicate his right because of a by-law which enables the corporation to lawfully destroy the right given.