[No. 12933–3–I.  Division One.  August 11, 1986.]

STEVE SHERMAN, *Respondent,* v. KIRK
LUNSFORD, *Appellant.*

*William L. Hanson,* for appellant.

*O. J. Humphrey III* and *Lasher & Johnson,* for respondent.

GROSSE, J.—This is an appeal from an action for breach of contract and specific performance. The trial court found appellant Lunsford in breach and awarded damages and attorney's fees to respondent Sherman. Sherman cross-appeals the denial of specific performance and the calculation of the amount of damages.

In August of 1980, Lunsford was substantially in arrears in payments to the former holder of his State of Alaska "entry permit" for fishing in that state. He needed to make a good faith payment of at least $15,000 by October of 1980 and then to try to renegotiate the payment schedule. In late August or September of 1980, Lunsford approached Sherman to invest in the fishing permit. Sherman agreed and had a cashier's check for $5,000 made out to the previous holder which the two delivered together on September 16.

In October they went to Sherman's attorney to discuss the elements of a written agreement designed to protect Sherman's interest in the permit. The attorney testified at trial that the two came to him and presented the basic elements of the contract which he then drew up and sent to Sherman with a copy for Lunsford. Lunsford never showed the draft contract to his business advisor or his attorney, even though Sherman's attorney recommended it be reviewed by Lunsford's counsel. Sherman's attorney testified that he added two provisions not discussed: standard boilerplate that the agreement could not be modified orally and that the written document represented the entire agreement, paragraphs 11 and 19 respectively.

The contract was signed at a second meeting on December 16, 1980. The contract called for a $15,000 pay-

ment by Sherman for which he would receive a 15 percent interest in the permit. The percentage interest in the permit was reached on the assumption that the permit was worth $100,000 and that Sherman's payment would give him a corresponding percentage ownership. The parties agreed orally, immediately prior to signing the contract, that Sherman need only make a payment of $13,000 at the signing, with the remaining $2,000 to be paid later. No deadline was stated or agreed to. Lunsford requested the $2,000 several times between January and the spring of 1981. Sherman tendered that amount during the summer fishing season by telling Lunsford to deduct that from his crew share.

Lunsford returned to Seattle after the 1981 fishing season ended and paid Sherman his full crew share without deducting the final payment for the interest in the permit. After consulting his attorney, Lunsford then sent Sherman $13,000 representing the total money paid by Sherman under the contract. He declared that the contract was terminated by Sherman's breach for failing to make the full $15,000 payment. Sherman refused to accept the money, instead suing for specific performance of the contract. After trial the court found Lunsford in breach and awarded damages of $26,064 flowing from the breach with attorney's fees of $14,250. The damage calculation was based on a 13 percent value of the permit and 13 percent of the value of 1 year's gross earnings by Lunsford for 1981 on the theory that the parties reformed the contract's terms by their conduct to require a $13,000 payment for a 13 percent interest in the permit, conclusion of law 3. The trial court refused to specifically enforce the contract finding it in the nature of a personal services contract and therefore limited the damages to those flowing immediately from the breach. Both parties appeal.

Lunsford first argues that there was no contract in fact because there was no agreement—no "meeting of the minds"—as to the essential elements of the contract. He argues that neither party accurately understood the written

agreement they signed. Lunsford also focuses on testimony as to confusion up to the point of signing the contract of whether the price and correlative interest in the permit were $13,000/13 percent or $15,000/15 percent.

This "reigning confusion" raised by Lunsford's counsel is a good illustration of why Washington follows the objective theory of contracts, focusing on the objective manifestations of the agreement rather than the less precise subjective intent of the parties not otherwise manifested. Absent fraud, deceit or coercion, a voluntary signator is bound to a signed contract even if ignorant of its terms. *See Lyall v. DeYoung*, 42 Wn. App. 252, 256–57, 711 P.2d 356 (1985), and cases cited therein; *Rainier Nat'l Bank v. Lewis*, 30 Wn. App. 419, 423, 635 P.2d 153 (1981). Lunsford claims none of these exceptions to excuse his performance. Although the parties may not have fully understood the legal significance of each and every term, they knew they were signing a binding contract; nothing in the record indicates that either party was misled or coerced into signing by other than economic exigencies. Both parties are bound to the terms of the signed contract absent proper evidence of modification or waiver thereof.

Lunsford next argues that Sherman breached the express terms of paragraph 2[1] since only $13,000 was paid at the signing and Sherman never formally tendered the $2,000. However, without objection, uncontradicted parol evidence was admitted to the effect that the parties agreed immediately prior to signing the contract that Sherman could pay $13,000 at that time and the remaining $2,000 at an unspecified time in the future. Both parties testified as to the fact and specifics of this oral agreement; both agreed that the contract was for 15 percent and that $15,000 was the total payment, consistent with the writing.[2]

---

[1] "2. Purchase Price and Terms. Purchaser shall pay to Seller the total purchase price of Fifteen Thousand Dollars ($15,000) in cash or by certified check at the signing of this Agreement."

[2] The trial court held that the parties reformed the contract by their conduct

Extrinsic evidence of terms not contained in a partially integrated writing[3] is not normally admitted when such terms contradict or are inconsistent with terms in the writing. *See Emrich v. Connell*, 105 Wn.2d 551, 556, 716 P.2d 863 (1986); *Black v. Evergreen Land Developers, Inc.*, 75 Wn.2d 241, 249, 450 P.2d 470 (1969). The admissibility of the parol evidence was never challenged here. We are therefore faced only with what legal effect it has, if any, on the contract at issue.

█ The oral agreement is properly characterized not as a "term" inconsistent with other terms in the writing, but as a waiver by Lunsford of the requirement that Sherman pay the full $15,000 at the signing: Lunsford agreed to

---

such that Sherman acquired only a 13 percent interest in the permit. Conclusion of law 3. This was error. A court only has "the power to reform the written instrument to conform with the intentions of the parties", *McKelvie v. Hackney*, 58 Wn.2d 23, 30, 360 P.2d 746 (1961). Reformation is improper here where all the evidence shows that from the signing of the contract forward the parties intended and agreed to a 15 percent interest for Sherman. Otherwise, there was no reason for Lunsford to agree to accept $2,000 later, nor to request it of Sherman several times; nor for Sherman to tender it. The unchallenged portions of finding of fact 4 recognize this, thus undercutting the rationale necessary to support reformation. Finding of fact 4 provides in relevant part:

> On December 16, 1980 neither party had any questions, objections, or concerns and they executed the contract, as drafted, at the office of the attorney for the plaintiff. The contract provided that plaintiff was purchasing a 15% interest in the permit for $15,000; however, *because the parties had been vacillating as to the percentage of ownership, plaintiff only paid defendant a total of $13,000*. The parties agreed that the $2,000 balance would be paid within a reasonable time thereafter. The defendant accepted the $13,000 and applied the funds to his own use.

(Italics ours.)

[3]Whether a contract is integrated is a question of fact, *Emrich v. Connell*, 105 Wn.2d 551, 556, 716 P.2d 863 (1986). A boilerplate integration clause will be disregarded where it is in fact false as demonstrated by parol evidence. *Emrich; Lyall v. DeYoung*, 42 Wn. App. 252, 257–58, 711 P.2d 356 (1985). Although the trial court made no specific finding as to integration, it impliedly found the writing to be partially integrated by holding that the parties reformed and modified the contract by their conduct to give Sherman a 13 percent interest. This court thus can find based on the uncontradicted testimony of the parties and the attorney who drafted the contract that the boilerplate integration clause was false, that the contract was at most partially integrated, and that the boilerplate of paragraph 11 was similarly false.

relinquish his known right under the terms of the writing to insist on full payment of the $15,000 at the signing, excusing Sherman's delay of full performance at the signing, and thus waiving that requirement. *Panorama Residential Protective Ass'n v. Panorama Corp.,* 97 Wn.2d 23, 28–29, 640 P.2d 1057 (1982) (acceptance of lesser sums waived contractual right to higher rents; waiver may be unilateral and without consideration so long as the right waived was known and existed at the time of the knowing waiver); *Bowman v. Webster,* 44 Wn.2d 667, 669–70, 269 P.2d 960 (1954). *See also* RCWA 62A.2–209(4) & Official Comment 4; Restatement (Second) of Contracts §§ 150, 84 (1981); E. Farnsworth, *Contracts* § 8.5, at 561 (1982) (waiver involves "the excuse of the nonoccurrence or of a delay in the occurrence of a condition of a duty").[4]

■ Sherman's oral tender of the $2,000 from his crew share is sufficient performance on his part under these circumstances to maintain the validity of the contract and his equitable position. *See* RCW 62A.2–511(2) and Official Comment 3, RCWA 62A.2–511 discussing tender of payment by the purchaser in a contract for sale of goods. Once Lunsford decided to abandon the contract and attempted to return the $13,000, Sherman was under no obligation to segregate or put aside the $2,000. *Kreger v. Hall,* 70 Wn.2d 1002, 1009, 425 P.2d 638 (1967) (one ready, willing, and able to tender performance is relieved of that duty when the other party by word or act indicates he will not perform). The contract was therefore as stated in the December 16 writing: $15,000 for 15 percent interest in the permit, with the final $2,000 payment waived by Lunsford

---

[4]Although Sherman's counsel characterized the oral agreement as a "modification" of the writing, this is technically incorrect. Modification in these circumstances requires assent, a writing, and consideration or detrimental reliance. *See* E. Farnsworth, *Contracts* § 8.5, at 562–63; § 7.6, at 474–76 (1982). While these elements might be found with some straining here, the more straightforward analysis is that the oral agreement amounted to a waiver of the requirement in paragraph 2. The result under either analysis is the same. Sherman is granted additional time to pay the final $2,000, while the contract is valid and binding on Lunsford.

for an indefinite period.

Lunsford next contends the contract is not legally enforceable, either because it is illegal under Alaska law, or unconscionable as a perpetual obligation. Neither claim is tenable.

Foreign law is a fact which may be proved in Washington courts in any manner acceptable to the trial court. RCW 5.24.020, 030; *Untersteiner v. Untersteiner,* 32 Wn. App. 859, 862–64, 650 P.2d 256 (1982) (enforcing contract for alimony found to be valid under Austrian law pleaded and proved at trial even though such obligation might not have been properly imposed by a Washington court); *Byrne v. Cooper,* 11 Wn. App. 549, 554–56, 523 P.2d 1216 (1974). The trial court held:

> The contract . . . was valid by both Washington and Alaska law to the extent only of rights as between the parties, but the plaintiff had no enforceable rights against or in the permit itself.[5]

Conclusion of law 2. The evidence before the trial court, consisting of letters and affidavits from the chairman of the Alaska Commercial Fisheries Entry Commission and an Alaskan Assistant Attorney General assigned to the commission, supports the conclusion. Although the text of the governing statutes can be read to indicate otherwise, *see* Alaska Stat. §§ 16.10.333; 16.43.150(g), .170, cases interpreting the statutes do not prohibit such private arrangements although they may not be formally sanctioned or recognized. *See Commercial Fisheries Entry Comm'n v. Templeton,* 598 P.2d 77 (Alaska 1979); *Chocknok v. Commercial Fisheries Entry Comm'n,* 696 P.2d 669, 675–76 (Alaska 1985); *Commercial Fisheries Entry Comm'n v. Apokedak,* 680 P.2d 486 (Alaska 1984). All recognized the existence of various arrangements and "splitting of licenses

---

[5]Sherman's challenge of the last clause need not be addressed here since it is not material to the ultimate decision. However, we note that recent Alaska cases appear to support the conclusion. *See Commercial Fisheries Entry Comm'n v. Apokedak,* 680 P.2d 486, 488 (Alaska 1984) (partner's interest in permit as against a partner not recognized by the State but not otherwise disapproved).

between partners" but that such arrangements are not recognized by the State.[6]

██ Lunsford next argues the contract is unconscionable because of its alleged disparity between a one–time consideration given by Sherman and the potential indefinite return of the gross receipts. Analysis of the agreement indicates that it meets all the criteria of an investment contract and thus a security, except that it was an "isolated transaction": Sherman made an investment, in a common enterprise, with the expectation of realizing profits from the efforts of others. *See McClellan v. Sundholm,* 89 Wn.2d 527, 531–33, 574 P.2d 371 (1978); *State v. Markham,* 40 Wn. App. 75, 82–83, 697 P.2d 263 (1985); RCW 21.20.320(1) (isolated transactions are exempt from the securities act). This is not a securities case. However, investment contracts or securities are not deemed unconscionable even though they have a similar structure to this agreement: In return for a one–time investment of money, the investor is entitled to a return which varies depending on the underlying agreement and the success of the venture. Here Lunsford desperately needed capital to retain his entry permit, and hence his business. Sherman provided the necessary funds and exacted an attractive agreement in exchange; but attractive only if Lunsford was continually successful in a difficult business with many hazards, including periodic closure by the state, storms, and changing markets, all as testified to at trial. Risk is inherent in investments; it is part of what makes the potential long–term, substantial

---

[6]Even if this agreement was illegal under Alaska law, the trial court would still be affirmed since Sherman, if not innocent, was not equally as culpable in the contract's illegality, and thus not in pari delicto with Lunsford. The trial court found Lunsford knew of the restrictions for sale and transfer of such permits and that Lunsford intended to use such restrictions to avoid the contract if possible. Finding of fact 5. The record supports a finding, implicit in finding of fact 5, that Lunsford was more culpable in any contractual illegality than Sherman. Where the parties to an illegal contract are not in pari delicto, the contract may be enforced against the more culpable party, particularly where such enforcement serves to deter similar conduct in the future. *Golberg v. Sanglier,* 96 Wn.2d 874, 882–86, 639 P.2d 1347, 647 P.2d 489 (1982).

return on a relatively small investment acceptable, since the investor may lose it all and have no return depending on the circumstances. There is no reason to find this contract as anything but an investment contract, and that it is not void as unconscionable. *See also Montgomery Ward & Co. v. Annuity Bd. of Southern Baptist Convention,* 16 Wn. App. 439, 444–46, 556 P.2d 552 (1976) (enforcing a lease after finding no evidence of unconscionability, just a "hard bargain").

The trial court refused to grant Sherman the contractual remedy of specific performance "because the contract is in the nature of a personal services contract". Nothing in the findings indicates why the trial court so held making resort to the oral opinion appropriate. *See Lyall,* at 256. The trial court clarified its holding in a motion for reconsideration at the final presentation of the findings and conclusions. The court recognized that neither the initial oral opinion nor the written findings and conclusions stated its underlying theory that the contract was voidable after the plaintiff had received relief. Thus, it would enforce the contract as to the two fishing seasons then completed, after which it would permit Lunsford to avoid it. We are unable to locate any authority which supports this theory of voiding the contract once the plaintiff is made whole. More important, this is not a personal services contract such as the employment contract in *State ex rel. Schoblom v. Anacortes Veneer, Inc.,* 42 Wn.2d 338, 255 P.2d 379 (1953).

Sherman is correct that the contract here does not specifically require Lunsford to fish in all instances and thus is not a personal services contract. Paragraph 6 of the contract simply requires Lunsford to maximize the catch under the permit and, if he is unable to fish, to apply to the State of Alaska to assign the permit to Sherman for use during that time. Moreover, Lunsford always has an option to sell his interest to either Sherman or another party under paragraph 9.1. None of the elements of a personal services

contract are thus present. *See* Restatement (Second) of Contracts §§ 366–368 (1981), especially § 367, comment *c*.

■ As noted previously, this writing is more in the nature of an investment contract than anything else. This does not preclude granting the contractual remedy of specific performance if it is otherwise proper. Specific performance will be granted if "the precise act sought to be compelled is clearly ascertainable . . . [if the court] can determine what must be done to constitute performance." (Citations omitted.) *Emrich,* at 558. In this case, the contract contains provisions which specify triggering events with sufficient particularity to permit specific performance, at least as to the provisions material here. Paragraph 3 provides Sherman is to receive 15 percent of the annual gross take of any boat operating under the permit, to be determined each calendar year. Paragraph 6 is the only section which is questionable. However, at argument Sherman's counsel retreated from his earlier request for specific performance in all particulars. He asked only for enforcement of paragraph 3 and did not request enforcement of paragraph 6. A decree of specific performance of paragraph 3 is proper since it states the triggering events with sufficient particularity: once the gross catch under the permit is determined for each calendar year, Sherman is to receive 15 percent.[7]

The trial court is affirmed in part and reversed in part. The case is remanded with instructions to enter an order for specific performance as to paragraph 3 for Sherman's 15 percent interest in the permit and for a calculation of damages based on the gross catch taken under the permit for

---

[7]Sherman's counsel also requested at argument that the decree award Sherman 15 percent of the value of the sale price of the permit, corresponding to his 15 percent interest. This issue was not litigated below. Neither is there any evidence before this court that such a sale has taken place. We are thus not in a position to construe any other portions of the contract or the contract as a whole to make such a ruling at this point. That, unfortunately, may be a matter for another suit.

each year beginning in 1981. We also award attorney's fees on appeal to Sherman as requested.[8]

WEBSTER, J., and REVELLE, J. Pro Tem., concur.

---

[8]Lunsford assigned error to the trial court's award of attorney's fees at trial, but failed to argue that issue on appeal. We affirm the trial court's discretionary ruling as to the reasonableness of the fees awarded at trial.