# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| IAN AND KERI SCHUMACHER,<br><br>Respondents,<br><br>v.<br><br>T. GARRETT CONSTRUCTION, INC., a Washington corporation,<br><br>Appellant,<br><br>and<br><br>TODD G. and JESSICA YOST, husband and wife, and the marital community composed thereof,<br><br>Defendants. | No. 76022-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br>FILED: May 22, 2017 |

TRICKEY, A.C.J. — T. Garrett Construction, Inc. (TGC) appeals the trial court's damages award to Ian and Keri Schumacher. TGC argues that the construction defects at issue and its failure to construct a cedar fence did not breach the agreement between the parties or any implied warranties. TGC requests that, if it prevails on appeal, this court award it the attorney fees it incurred below. The agreement's terms did not contain any express warranty against construction defects and did not require TGC to construct a cedar fence. The construction defects were not serious enough to violate the implied warranty of habitability. Therefore, we reverse and remand for an award of attorney fees below to TGC.

FACTS

TGC is a construction contractor in the business of remodeling homes and speculative building. In 2013, TGC began construction of a new house in Edgewood, Washington.

While the home was under construction, TGC listed it for sale through its real estate agent, Laura Petkov. Petkov prepared a real estate sales flyer and placed a listing on the local Multiple Listing Service (MLS). The MLS listing contained information about the home, including mentioning a cedar fence.

In October 2013, the Schumachers toured the home with their real estate agent, Doug Walker. The home had been framed, the roof and windows had been installed, and a partial cedar fence separated the back yard from the neighboring property.

On October 20, the Schumachers submitted a signed real estate purchase and sale agreement (REPSA) to TGC offering to purchase the home for $496,900. The REPSA listed an earnest money amount of $2,500, incorporated by reference a building specification sheet detailing the components of the property, and contained an integration clause, an attorney fee clause, and an inspection addendum. It also included a counteroffer addendum, which added several terms to the REPSA and included a copy of the sales flyer to illustrate where the additions would be located.

The inspection addendum provided in part that the REPSA was conditional on the Schumachers' subjective satisfaction with the property after inspecting it. If the Schumachers were not satisfied with the property for any reason, they could

2

give TGC notice and terminate the REPSA. The Schumachers would waive their right to terminate the REPSA if they failed to give timely notice or failed to act during the reply period. The inspection addendum's reply period was set at 10 days after mutual acceptance of the REPSA. If the Schumachers waived their rights under the inspection addendum, TGC was not obligated to make any repairs or modifications. The REPSA did not incorporate the sales flyer or MLS listing.

On October 21, Petkov sent Walker an e-mail with an updated builder specification sheet, which was the final version exchanged by the parties.

TGC signed the REPSA on October 22, and TGC and the Schumachers initialed each page of the specification sheet on October 23.[1]

TGC continued construction of the home, including building a prestained, non-cedar wood fence along the front and side of the home.

Between October 22, 2013 and closing on January 31, 2014, TGC and the Schumachers communicated regularly and met at the home several times to discuss the Schumachers' selections of finishes and other items in the home. A formal walk-though took place on January 22, 2014. Neither party made notes during the walk-through. The Schumachers made certain requests to TGC during and immediately after the walk-through, which TGC responded to and satisfied.

The Schumachers did not request to cancel the sale or have their earnest money returned to them, and did not hire a third party to inspect the home or the surrounding land. The home passed all inspections by the building authorities, and the building department issued it a certificate of occupancy.

---

[1] The parties also signed a limited builder's warranty, but later stipulated that it was unenforceable and inapplicable to the present case.

After closing, the Schumachers complained to TGC about a number of problems, including issues with the kitchen cabinets and trim, and the exterior stone veneer of the garage. TGC had improperly installed the stone on the exterior garage. The Schumachers obtained a bid from Reliable Masonry Service to remove and replace the exterior garage wall stone for $5,500 plus sales tax.

A year after closing, TGC notified the Schumachers in writing that either it or its subcontractors would repair some of the alleged defects at no cost. This included repairing the kitchen cabinetry and trim problems and entirely removing and replacing the stone on the exterior garage wall. The Schumachers rejected TGC's offer.

The defects were aesthetic in nature and did not present a significant safety risk to the Schumachers. The Schumachers did not move out of the home.

In February 2015, the Schumachers filed a complaint against TGC, alleging breach of contract, breach of the implied warranties of habitability and fitness for a particular purpose, breach of limited warranty, and violations of the Consumer Protection Act, chapter 19.86 RCW. The trial court awarded the Schumachers damages for their breach of contract claim in the amount of $9,772.50. The trial court based its damages award on the defective stone on the garage exterior ($5,500 plus $522.50 in sales tax), defective cabinets and trim in the kitchen ($350), and TGC's failure to build a cedar fence ($3,400). The trial court dismissed the Schumachers' other claims. The trial court found that the Schumachers were the substantially prevailing party and awarded attorney fees and costs totaling $13,021.31.

TGC appeals.

## ANALYSIS

### TGC Assignments of Error

The Schumachers argue that TGC improperly assigns error in its opening brief by failing to include a specific assignment of error to the trial court's judgment. The Schumachers claim that this precludes this court from considering any claim of error in the trial court's judgment. We disagree.

An appellant's brief should include a separate concise statement of each error it contends was made by the trial court, together with issues pertaining to those assignments of error and argument in support. RAP 10.3(a)(4), (6). A party's failure to assign error or to provide argument and citation to authority in support of an assignment of error precludes appellate consideration of an alleged error. Escude ex rel. Escude v. King County Pub. Hosp. Dist. No. 2, 117 Wn. App. 183, 190 n.4, 69 P.3d 895 (2003). But this court will not determine cases or issues on the basis of compliance or noncompliance of the Rules of Appellate Procedure except in compelling circumstances where justice demands. RAP 1.2(a); State v. Olson, 126 Wn.2d 315, 318-19, 323, 893 P.2d 629 (1995).

Here, TGC's assignments of error were not defective. TGC's notice of appeal designated the trial court's judgment. TGC's opening brief assigned error to the three conclusions of law reached by the trial court that form the basis for its final judgment. TGC's assignments of error are sufficient to satisfy RAP 10.3(a).

## Stone Garage Exterior and Kitchen Cabinetry

TGC argues that the trial court erred in awarding the Schumachers damages for its improper installation of the stone garage exterior and kitchen cabinetry. TGC primarily argues that the implied warranty of habitability was the only basis on which the Schumachers could have recovered, and that warranty was not breached. It also argues that the trial court applied the wrong legal standard to arrive at its damages award. We agree with TGC.

The Schumachers raise several grounds in support of the award: the counteroffer addendum to the REPSA; policy considerations placing liability on the builder-vendor; they did not have to request the particular relief awarded by the trial court; and that TGC erroneously argues that the implied warranty was the sole remedy available to the Schumachers. The Schumachers' arguments are unavailing because they are not supported by the record.

A breach of contract occurs when a party to an agreement fails to comply with a specific term. See G.W. Constr. Corp. v. Professional Serv. Indus., Inc., 70 Wn. App. 360, 364, 853 P.2d 484 (1993). An injured party suing for breach of contract may seek either damages resulting from the breach or performance under available warranties. See Panorama Village Homeowners Ass'n v. Golden Rule Roofing, Inc., 102 Wn. App. 422, 430, 10 P.3d 417 (2000).

The only duty a builder-vendor of a newly completed residence owes to its first purchaser, beyond complying with the express terms of the contract of sale, is the implied warranty of habitability. Stuart v. Coldwell Banker Comm. Grp., Inc., 109 Wn.2d 406, 416-17, 745 P.2d 1284 (1987). Washington does not recognize

6

an implied warranty of workmanlike performance in contracts for construction of a dwelling. See Urban Dev. Inc. v. Evergreen Bldg. Prods., LLC, 114 Wn. App. 639, 646, 59 P.3d 112 (2002). The implied warranty of fitness for a particular purpose does not apply to transactions involving real property. Condon Bros., Inc. v. Simpson Timber Co., 92 Wn. App. 275, 280-81, 966 P.2d 355 (1998). Washington does not recognize a cause of action for negligent construction on behalf of individual homeowners. Stuart, 109 Wn.2d at 417.

In Washington, the implied warranty of habitability has replaced the doctrine of caveat emptor in the context of the sale of new residential dwellings by builder-vendors. Atherton Condo. Apartment-Owners Ass'n Bd. of Directors v. Blume Dev. Co., 115 Wn.2d 506, 518, 799 P.2d 250 (1990) (citing House v. Thornton, 76 Wn.2d 428, 457 P.2d 199 (1969)). This implied warranty requires that "the foundations supporting [the new house] are firm and secure and that the house is structurally safe for the buyer's intended purpose of living in it." House, 76 Wn.2d at 436. This implied warranty of habitability arises by implication from the sales transaction itself and, therefore, is independent of the terms of the sales contract. Stuart, 109 Wn.2d at 417.

The implied warranty applies to defects that may severely restrict the habitability of the dwelling, amount to serious structural deficiencies, or present a substantial risk of future danger. Westlake View Condo. Ass'n v. Sixth Ave. View Partners, LLC, 146 Wn. App. 760, 771-72, 193 P.3d 161 (2008); see also Atherton, 115 Wn.2d at 520. The implied warranty does not apply to mere defects in workmanship, and does not require a builder-vendor to construct a perfect

7

residential dwelling. Atherton, 115 Wn.2d at 520, 522 (citing Stuart, 109 Wn.2d at 417).

TGC does not challenge any of the trial court's findings of fact on appeal, therefore, they are verities on appeal. Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 407, 858 P.2d 494 (1993). An appellate court's review is limited to determining whether those facts support the trial court's conclusions of law and judgment. Lakeside Pump & Equip., Inc. v. Austin Constr. Co., 89 Wn.2d 839, 842, 576 P.2d 392 (1978). Contract interpretation is a question of law reviewed de novo when the interpretation does not depend on the use of extrinsic evidence. Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co., 176 Wn.2d 502, 517, 296 P.3d 821 (2013).

In their complaint, the Schumachers claimed that TGC breached the REPSA by failing to provide all of the items identified in the agreement and building specification sheet, as well as some of the items paid for as upgrades. At trial, TGC argued that the Schumachers' breach of contract claim, as related to the stone garage exterior and kitchen cabinetry defects, had been waived under the inspection addendum in the REPSA.

The trial court ruled that the inspection addendum's waiver of rights was enforceable and precluded a number of the Schumachers' claims. The trial court found that there were several aesthetic defects in and around the home, but none presented a significant safety risk to the occupants of the home. The trial court nonetheless awarded damages to the Schumachers for the improper installation

of the stone garage exterior and kitchen cabinetry.[2] In its judgment, the trial court stated that these damages were awarded for breach of contract. The trial court appeared to base its decision on whether the defects were observable during the inspection.

The trial court erred in awarding damages to the Schumachers for the improper installation of the stone garage exterior and kitchen cabinetry. First, the improper installation of the garage stone and kitchen cabinetry did not breach the terms of the REPSA. The REPSA did not represent that the challenged items would be properly installed. The parties did not negotiate any warranty that TGC's construction work would be performed in a workmanlike manner or to any other standard. The terms of the REPSA did not provide a basis on which the Schumachers could maintain a breach of contract claim based on the improper installation of the stone garage exterior and kitchen cabinetry.

Second, the inspection addendum bars the Schumachers' recovery of damages for the improper installation of the stone garage exterior and kitchen cabinetry. The trial court ruled that the inspection addendum was valid and barred a number of the Schumachers' claims. The parties do not challenge the validity of the inspection addendum on appeal.

As discussed above, the Schumachers inspected the home and made certain requests to TGC, which it responded to and satisfied. No further action was taken during the inspection period. Under the inspection addendum, the

---

[2] In its conclusions of law, the trial court also held that the Schumachers were not entitled to any damages for construction defects or improperly performed work. The trial court similarly held that the inspection addendum barred the Schumachers from recovering damages for a number of other claims.

Schumachers thus signaled their subjective satisfaction with the home and waived their right to demand that TGC make additional repairs or modifications.

Whether the defects were readily observable during the inspection is irrelevant under the REPSA and the inspection addendum. Under the inspection addendum, the Schumachers had the opportunity to retain their own inspectors and to negotiate an extension of the inspection period. The fact that they did neither does not make TGC contractually liable to them for the improper installation of the stone garage exterior or kitchen cabinetry. Therefore, the Schumachers were not entitled to damages for the improperly installed stone garage exterior or kitchen cabinetry under the REPSA.

Third, the implied warranty of habitability does not provide a basis for awarding damages to the Schumachers. The trial court found that the defects in and around the home did not present a significant safety risk to the occupants of the home, and did not breach the implied warranty of habitability. Therefore, the implied warranty of habitability does not provide an alternate basis to justify the damages awarded to the Schumachers for the improper installation of the stone garage exterior or kitchen cabinetry.

In sum, TGC did not breach the terms of the REPSA, there was no express warranty between the parties, and the challenged defects did not rise to the level of breaching the implied warranty of habitability. The trial court erred in awarding damages to the Schumachers for TGC's improper installation of the stone garage exterior and kitchen cabinetry.

The Schumachers claim that the trial court's damages award is supported by the counteroffer addendum attached to the REPSA. The Schumachers contend that the counteroffer addendum shows that the parties agreed to install stone masonry to the front wall of the home. The counteroffer addendum does not add terms to the REPSA beyond the addition of masonry to the areas indicated in exhibit B of the counteroffer addendum, and does not provide an express warranty regarding the quality of workmanship. For the same reasons discussed above, the counteroffer addendum does not provide a contractual basis for the Schumachers' recovery of damages.

The Schumachers rely on Atherton to argue that it was proper for the trial court to consider whether the defects were observable during the walk-through in light of public policy considerations. 115 Wn.2d 506. Under Atherton, purchasers have a right to expect to receive what they bargained for and are protected from latent defects. 115 Wn.2d at 521-22. Liability for defects is properly fixed on the builder-vendor rather than the purchaser due to the builder-vendor's superior knowledge and ability to avoid. Atherton, 115 Wn.2d at 521-22. But Atherton announced these policy considerations in the context of the implied warranty of habitability. The trial court held that TGC did not breach the implied warranty of habitability. The defects at issue here are aesthetic and, therefore, the policy considerations underlying Atherton's analysis of the implied warranty of habitability carry less weight.

The Schumachers contend that the trial court's damages award for the stone garage exterior and kitchen cabinetry was proper even though they did not

11

request that particular relief. It is true that final judgments must grant the relief a party is entitled to, even if that party has not requested that particular relief in its pleading. CR 54(c). But CR 54(c) is inapplicable to the present case because TGC is not objecting to the award on that basis. TGC argues that there was not a valid legal basis to sustain the trial court's damages award to the Schumachers, not that the trial court erred by awarding relief the Schumachers did not seek. As discussed above, neither the REPSA nor the implied warranty of habitability provide a basis. Whether the Schumachers requested the particular relief granted by the trial court is irrelevant.

The Schumachers argue that TGC erroneously claims that the implied warrant of habitability is the exclusive remedy available to purchasers of new residential property from a builder-vendor. The Schumachers claim that TGC offered no evidence that the parties intended to limit the remedies available to them. Parties may contract for an exclusive remedy via express agreement, but the agreement must clearly indicate that the parties intended to limit the available remedies. Graoch Assocs. No. 5 Ltd. P'ship v. Titan Const. Corp., 126 Wn. App. 856, 865, 109 P.3d 830 (2005). The Schumachers mischaracterize TGC's position. TGC argues that the implied warranty of habitability is the only implied warranty that applies to the present case and that the terms of the REPSA do not provide express warranties. TGC is correct. The REPSA did not limit the remedies available to the parties. The Schumachers were able to sue for a breach of the REPSA or any other ground available to them under Washington law. The

12

Schumachers have not shown that they were impermissibly barred from seeking remedies by the REPSA or otherwise.

## Cedar Fence

TGC argues that the trial court erred in awarding damages to the Schumachers for their breach of contract claim based on TGC's alleged failure to build a cedar fence. TGC contends that the REPSA did not require it to build a cedar fence for the Schumachers, and in the alternative that the inspection addendum in the REPSA precluded the Schumachers' claim. We agree.

*Contractual Obligation*

TGC first argues that it was not contractually obligated to build a cedar fence. Specifically, it argues that the REPSA does not contain any reference to a cedar fence, including in the specification sheet. The Schumachers claim that TGC was obligated to construct a cedar fence because the sales flyer, attached to the counteroffer addendum as exhibit B, mentions one. Because the REPSA did not require TGC to construct a cedar fence and the sales flyer was not incorporated in its entirety, we agree with TGC.

"Absent fraud, deceit or coercion, a voluntary signator is bound to a signed contract." Sherman v. Lunsford, 44 Wn. App. 858, 861, 723 P.2d 1176 (1986). Parties are bound by the contract as signed. Wells Trust by Horning v. Grant Cent. Sauna and Hot Tub Co. of Seattle, 62 Wn. App. 593, 602, 815 P.2d 284 (1991).

The presence of an integration clause "strongly supports a conclusion that the parties' agreement was fully integrated." Olsen Media v. Energy Sciences, Inc., 32 Wn. App. 579, 584, 648 P.2d 493 (1982). If the contract is integrated,

other documents are inadmissible as parol evidence. <u>Olsen Media</u>, 32 Wn. App. at 584. But if the parties to a contract clearly and unequivocally incorporate by reference some other document into their contract, that document becomes part of the contract. <u>Satomi Owners Ass'n v. Satomi, LLC</u>, 167 Wn.2d 781, 801, 225 P.3d 213 (2009). Where material is incorporated for a limited purpose, it becomes part of the contract for that purpose only, and is treated as irrelevant for all other purposes. <u>W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.</u>, 102 Wn. App. 488, 499, 7 P.3d 861 (2000).

The correct interpretation of an integrated agreement is determined as a question of law, unless it depends on the credibility of extrinsic evidence or a choice among reasonable inferences that can be drawn from extrinsic evidence. <u>Berg v. Hudesman</u>, 115 Wn.2d 657, 667-68, 801 P.2d 222 (1990) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 212 (1981)).

Here, the REPSA did not require TGC to construct a cedar fence for the Schumachers. The REPSA and attached specification sheet do not contain any provisions requiring TGC to build a fence as part of the home. For example, the specification sheet details many aspects of the home's construction, but the landscaping and exterior structure sections do not list a fence. As the trial court noted in its oral decision, the REPSA and the specification sheet did not mention a fence.[3] Therefore, the REPSA and specification sheet did not create a contractual duty for TGC to construct a cedar fence.

---

[3] The trial court appeared to determine that the fence was part of the deal based on the fact that one was actually constructed.

The Schumachers argue that, because exhibit B of the counteroffer addendum to the REPSA contains a reference to a cedar fence, the parties intended to require TGC to build a cedar fence. But exhibit B was not incorporated in its entirety, and the cedar fence was not included in the REPSA as an additional term.

Exhibit B is a copy of the sales flyer for the home with circled areas on an illustration of the home. The paragraph describing the home states, "Cedar fence."[4] But the parties attached this exhibit for the limited purpose of illustrating two additional terms contained in the counteroffer addendum: "Masonry stone to be installed in all areas as shown on attached exhibit B (see circled areas)" and "Covered front porch to be installed as shown on attached exhibit B (see circled area)."[5] The counteroffer addendum does not mention the cedar fence. There is no indication in the counteroffer addendum that the parties also intended to incorporate exhibit B's reference to a cedar fence as a term in the contract.

And nothing in the REPSA suggests that the parties meant to incorporate the other terms in the sales flyer. The REPSA contained an integration clause that stated, "This Agreement constitutes the entire understanding between the parties and supersedes all prior or contemporaneous understandings and representations."[6] The REPSA incorporated by reference eight addenda, which did not include the sales flyer or MLS listing. As the trial court noted, the sales

---

[4] Ex. 1.
[5] Ex. 1.
[6] Ex. 1 at 4.

15

flyer and MLS listing predated the REPSA and were not incorporated by reference and, therefore, were superseded by operation of the REPSA's integration clause.

In sum, TGC was not contractually obligated to construct a fence for the Schumachers. The REPSA and its addenda did not include any provision requiring TGC to construct a fence. The MLS listing and sales flyer both mentioned a cedar fence, but neither were incorporated into the REPSA. Although a copy of the sales flyer was included in the counteroffer addendum, it was for the limited purpose of illustrating the changes to the REPSA agreed to by the parties. Therefore, the trial court erred in awarding breach of contract damages to the Schumachers based on TGC's failure to construct a cedar fence.

The trial court, relying on Berg, determined that TGC and the Schumachers intended that TGC would construct a cedar fence by looking to the MLS listing and sales flyer as extrinsic evidence. 115 Wn.2d 657. The relevant issue before the Berg court was the admissibility of extrinsic evidence as to the entire circumstances under which the contract was made, as an aid to ascertaining the parties' intent. 115 Wn.2d at 667. Berg involved a dispute between a landlord and tenant regarding the proper formula used to calculate rent. 115 Wn.2d at 661-63. To resolve ambiguity in the lease document, the court looked to prior agreements, prior rental income from subtenants, and other values outside of the master lease at issue. Berg, 115 Wn.2d at 672-73.

Berg is inapplicable here. As discussed above, the REPSA contained an integration clause that explicitly superseded all prior or contemporaneous understandings and representations. The trial court found in its conclusions of law

16

that the sales flyer and MLS listing predated the REPSA and were superseded. The parties did not put forward any other extrinsic evidence in support of their intent that a cedar fence was part of the REPSA. The trial court erred when it relied on Berg to find that the parties intended that TGC would construct a cedar fence.

*Inspection Addendum Waiver*

In the alternative, TGC argues that even if it was contractually obligated to construct a cedar fence, the inspection addendum to the REPSA operates to bar the Schumachers' claims. Because we hold there was no contractual obligation, we do not determine whether the Schumachers would have waived that right.

The Schumachers argue for the first time on appeal that TGC failed to establish that it constructed the non-cedar fence within the 10-day inspection period. They argue that this precludes TGC's argument that the inspection addendum bars their claim. The Schumachers did not raise this argument concerning the 10-day inspection period in their complaint or trial brief below.

An appellate court may refuse to review any claim of error which was not raised in the trial court. RAP 2.5(a). "A party may present a ground for affirming a trial court decision which was not presented to the trial court if the record has been sufficiently developed to fairly consider the ground." RAP 2.5(a); see Wilson & Son Ranch, LLC v. Hintz, 162 Wn. App. 297, 304-05, 253 P.3d 470 (2011) (allowing a novel argument on appeal may result in injustice to the opposing party due to lack of notice that it must develop a record).

17

Here, the record has not been sufficiently developed to consider the Schumacher's novel argument. TGC was not given an opportunity below to address whether the non-cedar fence was constructed within the inspection period and, if so, how this affected the inspection addendum. We decline to consider the Schumachers' new argument on appeal.

## Attorney Fees and Costs

TGC requests that, if this court reverses the trial court's damages award to the Schumachers, it also award TGC the attorney fees and costs it incurred below. The REPSA contains an attorney fees provision, which states that "if Buyer or Seller institutes suit against the other concerning this Agreement the prevailing party is entitled to reasonable attorneys' fees and expenses."[7] The trial court held that the Schumachers were the substantially prevailing party and were entitled to their reasonable attorney fees and costs.

Because we reverse the trial court's damages award for the stone garage exterior, kitchen cabinetry, and lack of a cedar fence, the Schumachers have not prevailed on any of their claims against TGC. Therefore, TGC is the substantially prevailing party and is entitled to recover its reasonable attorney fees and costs below under the REPSA in an amount to be determined on remand.

## Attorney Fees and Costs on Appeal

TGC and the Schumachers each request an award of appellate attorney fees and costs if they prevail. RAP 18.1. In an action on a contract that specifically provides for attorney fees and costs, the prevailing party is entitled to its

---

[7] Ex. 1 at 4.

reasonable attorney fees and costs incurred to enforce the provisions of the contract. RCW 4.84.330.

The REPSA contains an attorney fees and costs provision that entitles the prevailing party to its reasonable attorney fees and expenses. On appeal, TGC challenged the trial court's damages award for construction defects and the lack of a cedar fence. TGC has prevailed on both. TGC is the substantially prevailing party on appeal, and is entitled to recover its reasonable appellate attorney fees and costs.

Reversed and remanded for further proceedings consistent with this opinion.

Trickey, ACJ

WE CONCUR:

Mann, J.                              Leach, J.

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2017 MAY 22 AM 10: 04